[This opinion has been published in *Ohio Official Reports* at 64 Ohio St.3d 509.]

THE STATE EX REL. FENLEY *v.* OHIO HISTORICAL SOCIETY ET AL.

[Cite as *State ex rel. Fenley v. Ohio Historical Soc.*, 1992-Ohio-2.]

*Public records—Custodian of public records has no clear legal duty under R.C. 149.43(B) to transmit copies of those records by mail.*

(No. 90-1902—Submitted June 17, 1992—Decided September 2, 1992.)

IN MANDAMUS.

———————————

{¶ 1} Relator, Ann Fenley, is a genealogist who seeks a writ of mandamus pursuant to the Public Records Act, R.C. 149.43. Respondents are the Ohio Historical Society (an "archival institution" under R.C. 149.44) and four of its officers ("the Society"). Fenley objects to the Society's charge for finding, copying, and mailing historical death certificates. Both Fenley and the Society agree that the certificates are "public records" as defined by R.C. 149.43(A)(1). In her complaint, Fenley seeks to compel the Society to mail copies of those records at a cost of $0.25 each, plus postage.

{¶ 2} Fenley, a resident of Montgomery County, asked the Society to mail her an uncertified copy of a death certificate in June 1989. Based on previous correspondence with the Society, Fenley was aware that the charge for mailing such a copy was $6.00 for Society members and $8.00 for nonmembers. Fenley considered both charges excessive because the fee charged by the Society to those individuals appearing in person in Columbus was just $0.25 for making their own copies. Therefore, Fenley's June 1989 request included a check for $0.25.

{¶ 3} Thereafter, in September 1989, the Society altered its fee schedule, and instituted a flat $7.00 fee for mailing copies of uncertified death certificates. At that time, the Society notified Fenley of this change, forwarded a copy of the death certificate she had requested to her, and informed her that the $7.00 mailing

fee had been donated by a Society member. Fenley then brought this original action in mandamus, attempting to compel the Society to lower the price it charges to mail uncertified death certificates.

_____

*Porter, Wright, Morris & Arthur*, *Robert E. Portune*, *Thomas H. Pyper* and *Ronald J. Kozar*, for relator.

*Fred J. Milligan, Jr.*, for respondents.

_____

**Per Curiam.**

**{¶ 4}** The issue presented by this mandamus action is whether R.C. 149.43 requires a custodian of public records to mail copies of those records upon request. For the reasons which follow, we find that a custodian of public records has no clear legal duty under R.C. 149.43(B) to transmit copies of those records by mail, and we deny the writ.

**{¶ 5}** R.C. 149.43(C) authorizes a person who allegedly is aggrieved by a governmental unit's failure to comply with R.C. 149.43(B) to commence a mandamus action to force compliance, and also to seek reasonable attorney fees. Before a writ of mandamus will issue in a public records case we must find that relator is entitled to respondents' performance of a clear legal duty. See *State ex rel. The Fairfield Leader v. Ricketts* (1990), 56 Ohio St.3d 97, 102, 564 N.E.2d 486, 491.

**{¶ 6}** As an initial matter, the Society argues that it has no duty to act because Fenley has already been given relief (she was mailed the certificate after a member donated the $7.00 fee), and that mandamus may not be used "to remedy the anticipated nonperformance of a duty." *State ex rel. Home Care Pharmacy, Inc. v. Creasy* (1981), 67 Ohio St.2d 342, 343, 21 O.O.3d 215, 216, 423 N.E.2d 482, 483 (holding that where an alleged duty has already been carried out, a writ of mandamus will not be granted to compel observance of the law generally). Fenley

2

counters that she is still an "aggrieved" party under R.C. 149.43(C) because she was not given a copy of the death certificate in accordance with the cost and access requirements of R.C. 149.43(B).

{¶ 7} We agree with Fenley's position on this initial matter. The policy she attacks, the Society's $7.00 mailing fee, remains in effect. To deny Fenley relief under the rule in *Home Care Pharmacy* would permit persons responsible for public records to circumvent review of their practices by making exceptions for those who object. Fenley's ultimate goal is to change the Society's mailing-charge policy to comply with what she believes are the requirements of R.C. 149.43(B). We thus find that she is an "aggrieved" party for R.C. 149.43(C) purposes.

{¶ 8} The parties stipulate that the death certificate at issue is a public record. The parties disagree, however, over R.C. 149.43(B)'s requirements regarding the mailing of such a record.

{¶ 9} R.C. 149.43(B) provides:

"All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division."

{¶ 10} R.C. 149.43(B) does not expressly provide that a custodian of public records must make copies available by mail, nor does it detail any procedure to be followed if copies are mailed. Acknowledging this, Fenley urges this court to construe R.C. 149.43(B) broadly in favor of public disclosure, as required by *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 173, 527 N.E.2d 1230, 1232, and to hold that the custodian's duty to make records "available" includes the obligation to make copies available by mail. Adopting this position would increase the availability of public information.

**{¶ 11}** The Society, however, maintains that the plain meaning of R.C. 149.43(B) is contrary to Fenley's construction. The statute literally requires only that public records be made "available" for inspection "at all reasonable times during regular business hours." The statute further requires the custodian of the records to make copies "available at cost." The Society argues that the word "available" is not ambiguous on the subject of mailing copies, and that all that the statute requires custodians to do is to allow inspection and copying at their place of business during business hours.

**{¶ 12}** It is a frequently cited rule of statutory construction that "where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation." *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 214, 396 N.E.2d 770, 772. We find that the language of R.C. 149.43 is clear and unambiguous. A custodian of public records who makes those records available for inspection, and who makes copies available upon request at the governmental unit's place of business, fulfills the responsibilities placed upon him or her by R.C. 149.43. We thus find that the word "available" is not synonymous with "available by mail." To apply that interpretation would be to rewrite the statute beyond what its literal words will support. Such an interpretation of the statute would require this court to add words to R. C. 149.43. We refuse to do this without a more affirmative authorization from the General Assembly. Moreover, the General Assembly is well equipped to determine what the cost of such a mailing should reasonably be, if it does determine that a duty to mail can appropriately be placed upon the custodian of public records. Forcing the holders of public records to provide copies by mail could conceivably place unacceptable burdens upon the governmental units having custody of the records. The General Assembly can weigh those burdens against the public's right to know and legislate an equitable balance.

4

**{¶ 13}** Fenley also argues that we should extend the principle established in the second paragraph of the syllabus of *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, to the circumstances of this case. That syllabus paragraph reads: "A governmental body refusing to release records has the burden of proving that the records are excepted from disclosure by R.C. 149.43." Fenley urges us to apply that reasoning to this case, resulting in a burden being placed on a custodian of records to show why copies should not be provided by mail. We do not find Fenley's argument persuasive. A governmental body's refusal to *release* records simply is not analogous to a governmental body's refusal to *mail* copies of records it is fully willing to release to the public. R.C. 149.43 places a duty on the custodian of public records to release them, with certain noted exceptions; it places no similar duty to provide copies by mail.

**{¶ 14}** Furthermore, R.C. 149.43(B) establishes a standard with which custodians of public records must comply: to make the records available for inspection during business hours and to makes copies available at cost. But, the statute also affords a measure of discretion, which this court has held to govern the method of compliance. *State ex rel. Recodat Co. v. Buchanan* (1989), 46 Ohio St.3d 163, 165, 546 N.E.2d 203, 205; *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 461, 584 N.E.2d 665, 670 ("R.C. 149.43 requires the message, not the medium, to be disclosed."). Thus, a custodian of public records who complies with the access requirements specified in R.C. 149.43(B) should have some discretion to determine what if any additional access he or she will permit.

**{¶ 15}** Many of the arguments presented by both relator and respondents are public policy arguments going to the question of whether it is appropriate to require the custodian of records to provide copies by mail. As discussed *supra*, those contentions are better addressed by the General Assembly than by this court. For the same reason, it is unnecessary for us to consider the arguments raised by

both parties concerning what a "reasonable" cost charged for mailing records should be.

{¶ 16} Because we hold that R.C. 149.43(B) places no duty on the person responsible for public records to provide copies of those records by mail, relator is not entitled to respondents' performance of the requested act. The writ of mandamus is denied.

*Writ denied.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, WRIGHT and RESNICK, JJ., concur.

———————————

**DOUGLAS, J., dissenting.**

{¶ 17} Today a majority of this court takes yet another whack at the public records law. See, *e.g.*, *State ex rel. Toledo Blade Co. v. Northwood* (1991), 58 Ohio St.3d 213, 569 N.E.2d 904. Because I disagree with the holding of the majority, I must respectfully dissent. I do so because I believe that the majority has incorrectly construed R.C. 149.43(B).

{¶ 18} The parties to this original action in mandamus are Ann Fenley ("relator"), a resident citizen of Ohio who, for many years, has pursued the vocation of genealogy, and the Ohio Historical Society ("OHS") and certain officials and employees of OHS, collectively referred to as "respondents." OHS is a state-chartered nonprofit corporation which performs specified public functions. Included among the public functions of the OHS is OHS serving as the archives administration for the state and its political subdivisions as provided for in R.C. 149.31 to 149.42. OHS is an "archival institution" pursuant to R.C. 149.44.

{¶ 19} Prior to December 1988, the Ohio Department of Health, Division of Vital Statistics ("DVS") (now office of Vital Statistics), had possession of all death certificates of Ohio decedents for the time period of 1908-1936. On occasion, when relator sought a copy or copies of death certificates, she would mail her

6

request to DVS which would provide her the requested copies at $1.10 each. If a special search of the files and records became necessary to locate the requested certificate, an additional charge was made in accordance with former R.C. 3705.05 (now see 3705.24[A]).

{¶ 20} In December 1988, DVS transferred the 1908-1936 death certificates to OHS. Relator soon discovered that the DVS copying and mailing policy and charges would not be followed by OHS. While the cost factor of making the copies in question has been placed at issue by the parties, the majority only decides the question of whether, upon proper request and payment of some fee, a public record must be mailed to a requesting person by an agency holding public records. Because the majority does not deal with the cost factor, neither will this dissent notwithstanding that such question is a critical part of this case. Suffice to say, OHS's policy of charging relator for requested copies by mail amounts to nearly a six hundred percent increase over the costs previously charged by DVS.

{¶ 21} Feeling that she was an "aggrieved" person, relator commenced this original action in mandamus. She did so on the basis that her rights granted by R.C. 149.43 were being abridged in two ways: that she could not obtain copies of records by mail and that she could not receive copies at "cost" as provided for by statute. While it appears from the record that OHS *would* make the copies available by mail to relator at a specified cost, the majority nevertheless decides this case solely on the basis that a custodian of public records does not have a duty, even given a proper request and tendered payment, to mail properly requested public records. It is with this decision of the majority that I take exception.

{¶ 22} R.C. 149.43(B) provides that:

"All public records shall be promptly prepared *and made available for inspection* to any person at all reasonable times during regular business hours. *Upon request*, a person responsible for public records *shall make copies available at cost*, within a reasonable period of time. *In order to facilitate broader access to*

*public records*, governmental units shall maintain public records in such a manner *that they can be made available for inspection* in accordance with this division." (Emphasis added.)

**{¶ 23}** The majority, in construing the term "available," as used in R.C. 149.43(B), says that "the word 'available' is not synonymous with 'available by mail.' To apply that interpretation would be to rewrite the statute beyond what its literal words will support. Such an interpretation of the statute would require this court to add words to R.C. 149.43." I do not agree.

**{¶ 24}** The rationale behind Ohio's public records law is that public records belong to the public, and the governmental unit or custodian holding the record does so on behalf of the public. See *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786. "Further, the law's public purpose requires a *broad construction* of the provisions defining public records. Because the law is intended to benefit the public through access to records, this court has resolved doubts in favor of disclosure." (Emphasis added.) *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 173, 527 N.E.2d 1230, 1232.

**{¶ 25}** By its own terms, R.C. 149.43(B) runs counter to the majority's opinion. R.C. 149.43(B) explicitly provides that "[i]n order to facilitate *broader access* to public records, governmental units shall maintain public records in such a manner they can be *made available* for inspection * * *." (Emphasis added.) Indeed, the General Assembly has encouraged and anticipated that governmental units which are in possession of public records will take affirmative action to ensure that public records remain open *and available* to the public. Providing records by mail was not a contemplated barrier to such action.

**{¶ 26}** Further, there is no question that R.C. 149.43 is a remedial statute and, as a consequence, "[r]emedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining

justice." R.C. 1.11. Thus, I would interpret the phrase "shall make copies available at cost, within a reasonable period of time," as requiring a governmental unit or custodian of public records to transmit copies of records by mail if requested by a person entitled to such records. The governmental unit or custodian should, of course, be able to charge a reasonable fee.

{¶ 27} Rather than the law pronounced by the majority, I believe that a syllabus in this case should state that "R.C. 149.43 requires custodians of public records to accept and honor, upon payment of a reasonable fee, requests for public records to be mailed to a requesting person." In holding contra to this, the majority does not consider the need for and the right to obtain public records by incarcerated persons, out-of-state persons, or even in-state persons who do not have access to or who are not in close proximity to the public agency from which records are sought. Permitting public authorities to disregard requests that public records be mailed restricts meaningful access to such records to citizens or their agents who are fortunate enough to live within, or have transportation to, the location of where the public records are held. In this day and age when Ohioans can even obtain their vehicle license plates (or stickers) by mail, the majority truly reaches a curious result re public records. Unfortunately, from this day forward, any public agency is now authorized to refuse to mail a properly requested public record. *Any* citizen seeking *any* public record must now appear in person or by agent to secure such record—a record(s) that in the first instance already belongs to that citizen as a member of the public.

{¶ 28} Today's decision deviates from our long-established course to ensure that public records remain open *and available* to the public. This court has repeatedly applied R.C. 149.43 in a liberal manner, affording aggrieved citizens access to governmental information. Why the majority has suddenly decided to chart a different course is a mystery to me. Accordingly, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

---

**WRIGHT, J.**

**{¶ 29}** I respectfully dissent from this court's decision to deny relator's request for a writ of mandamus. I would order further briefing on the issue of the actual cost to the Ohio Historical Society before deciding whether the writ should be granted or denied.

**{¶ 30}** Although I share Justice Douglas's interpretation of R.C. 149.43(B), I write separately to register my strong disagreement with the majority's contention that the statute does not impose a duty upon a custodian of public records to mail copies of documents to requestors who are willing to pay for same. Today's decision runs contrary to several recent decisions by this court which have broadened the public's access to public records under R.C. 149.43. See, *e.g.*, *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 584 N.E.2d 665; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786; *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313; *State ex rel. Fostoria Daily Review v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313.

**{¶ 31}** As a matter of public policy, custodians should adopt and implement reasonable measures which will allow the broadest range of access to public records by Ohio citizens. Although I believe the party making the request should bear reasonable costs associated therewith, a mandate that custodians make copies of public records available by mail is neither burdensome nor unreasonable. This practice would provide access to those Ohio citizens who are unable to travel to the custodian due to distance or otherwise. Indeed, we may well be sanctioning the violation of the Americans With Disabilities Act of 1990, Section 12101 *et seq.*,

Title 42, U.S.Code,[1] if we do not place a duty on custodians of public records to respond to reasonable requests, such as the one before us.

{¶ **32**} Our recent decisions have interpreted R.C. 149.43 broadly in order to provide Ohio citizens with complete access to public records. This court's failure to impose a duty to respond by mail to requests is most disappointing. Thus, my dissent.

————————

1. Subchapter II of the Act provides that:

"* * * no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Section 12132, Title 42, U.S. Code.