The STATE ex rel. FINNERTY

v.

CUSTODIAN OF RECORDS, STRONGSVILLE POLICE DEPARTMENT.

[Cite as State ex rel. Finnerty v. Custodian of Records, Strongsville Police Dept. (1994), 96 Ohio App.3d 569.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 66095, 66096, 66105, 66106, 66123, 66124, 66128, 66138, 66139, 66151, 66155, 66182, 66185, 66399, 66661.

Decided Aug. 25, 1994.

Nahra, C.J., concurred in judgment.

*Patrick Finnerty, pro se.*

*John D. Ryan,* for respondent.

---

*Per Curiam.*

The cases *sub judice* are the remaining consolidated cases from seventeen identical public records mandamus actions filed by various inmates of the Lorain Correctional Institution against the respondent, the Custodian of Records for the Strongsville Police Department, to compel, pursuant to R.C. 149.43, the release of records relating to the investigation of the homicides of Thomas Kowal and Kim Shusta. Dennis Calo filed the first case on July 21, 1993, Cuyahoga App. No. 65868. Attached to his complaint was his requesting letter, stating that although he was in prison, he had a representative who would inspect and pay for copies in full. He did not provide any documentation, *i.e.,* a power of attorney, which identified this representative and stated the scope of authority. Calo also attached a three-page list of records requested. In this June 7, 1993 letter, Calo stated that his representative had made various efforts to inspect and copy the requested records.

The succeeding petitions used a form complaint and attached a form-requesting letter and the same three-page list of requested records.[1] Only the dates and the requester's name differed. None of the petitioners identified his representative. None attached any evidence of a representative, such as a power of attorney stating the scope of authority. None alleged that his representative had made

---

1. In the subsequent petitions, the three-page list acquired a cover page, but the substance of the request was identical.

any efforts to obtain the records on his behalf. Rather, the requesting letter asserted that a representative would pay the copying costs in full when informed of when and where to do so. The following cases were consolidated with Calo's case:

1. Donald L. Richard, Sr., case No. 66075;

2. Eugene Lydicowens, case No. 66095;

3. Patrick Finnerty, case No. 66096;

4. David Darst, case No. 66105;

5. Kevin Mudrack, case No. 66106;

6. Samuel Ramos, case No. 66123;

7. Michael Smith, case No. 66124;

8. Dennis Yeager, case No. 66128;

9. Ronald Neely, case No. 66138;

10. Andy Majoris, case No. 66139;

11. Jim Fowler, case No. 66151;

12. Scott Curns, case No. 66155;

13. Michael Sarkozy, case No. 66182;

14. Richard Almond, case No. 66185;

15. Marshall Nunnally, case No. 66661;

16. Leslie Morgan, case No. 66399.

The petitioners filed each of these cases *pro se*.

Both Dennis Calo and Donald L. Richard dismissed their cases without prejudice.[2] After the respondent filed a dispositive motion, Finnerty requested an extension of time to complete his brief in opposition. This court granted that motion and explicitly gave all the relators the same additional time to file their opposition. However, only Finnerty filed a brief. None of the other fourteen relators filed anything. In his brief, Finnerty uses both singular and plural in referring to relator; thus, he may have been trying to submit arguments on behalf of all of the relators. However, Finnerty could represent only himself in this consolidated public records mandamus action. He had no authority to file any materials for any of the other relators. The other fourteen relators have failed to prosecute their actions, and this court accordingly dismisses their cases.

---

2. The court notes that Dennis Calo was convicted of the murders of Kim Shusta and Thomas Kowal.

Moreover, because these fourteen relators failed to identify their representatives and provide them with reliable credentials stating the scope of their authority, the reasoning and holding in the rest of this opinion also applies to them.

■ Thus, only Finnerty's claim remains before this court. The gravamen of the respondent's dispositive motion is that, pursuant to *State ex rel. Fenley v. Ohio Historical Soc.* (1992), 64 Ohio St.3d 509, 597 N.E.2d 120, and *State ex rel. Larkins v. Kovacic* (May 5, 1993), Cuyahoga App. No. 64780, unreported, the state has no duty to send records by mail, to respond to requests by mail, to inform requesters by mail of the number of records available or the costs of copying and, by extension, to provide records to a designee. In *Fenley* and its progeny, the courts have held that mandamus does not lie to compel custodians of public records to mail records to requesters because the duty to mail is not explicitly stated in R.C. 149.43. The statute requires only that the records be made available for inspection and copying during regular business hours. The word "available" is not synonymous with "available by mail." In *Larkins,* this court indicated that just as there was no duty to send records by mail because the statute did not explicitly so provide, so too there was no duty to respond to request inquiries by mail because R.C. 149.43 did not explicitly provide such a duty. Furthermore, in *Larkins,* this court examined whether a designee should be permitted for those individuals who cannot personally inspect records, *e.g.,* incarcerated convicts. After weighing the competing factors for allowing or disallowing a designee, this court in the exercise of its discretion denied the writ because, *inter alia,* the relator failed to identify a designee.

Finnerty in his response endeavored to disarm the respondent's arguments by identifying Vincent Calo as his representative. Attached to the brief was Vincent Calo's affidavit in which he stated that in August 1993, he agreed to be the representative of "interested parties" and in which he detailed his efforts to obtain the records. However, Finnerty failed to attach any document appointing Vincent Calo as his designee and stating the scope of his authority. Finnerty failed to allege even the existence of such evidence, and he failed to establish how he informed respondent that Vincent Calo was his designee.

In its reply brief, the respondent admits that Vincent Calo inquired about obtaining the records but that he identified himself as the designee of Dennis Calo only. He did not assert he was representing Finnerty or any of the other relators. From this, the respondent argues that it is now clear that Vincent Calo, Finnerty and the other relators were and are operating in concert to obtain the records for Dennis Calo. Therefore, Dennis Calo is the real party in interest, and the actions should be dismissed because the real party in interest is not a party; indeed, he removed himself from the proceedings.

Regardless of whether there is a "Calo conspiracy," the decisive issue in this case is whether and under what circumstances a designee may be permitted for purposes of using and enforcing the Ohio Public Records Act. In *Larkins*, this court noted that there are powerful, competing reasons on both sides of the designee issue. Against allowing a designee are the risk of infringing the legislature's authority by adding procedures to the statute, the uncertainty of the right to be enforced, and the directions of the Ohio Supreme Court in *Fenley* and *State ex rel. Nelson v. Fuerst* (1993), 66 Ohio St.3d 47, 607 N.E.2d 836. On the other hand, allowing a designee would advance the purpose of the Public Records Act by allowing broader access to governmental records, would avoid the possibility of leaving a significant portion of the population without the ability to enforce their rights to public records, would avoid challenges concerning equal protection and the Federal Disabilities Act, would identify the real party in interest, and would avoid creating the appearance of inequity that the right to public records is a function of wealth and the ability to travel.

Additionally, the Ohio Supreme Court recently indicated that designees may be acceptable. In *State ex rel. Carpenter v. Tubbs Jones* (July 8, 1993), Cuyahoga App. No. 64991, unreported, affirmed (1994), 68 Ohio St.3d 181, 624 N.E.2d 1048, this court dismissed a prisoner public records mandamus action, reasoning that a designee may not be substituted for the party requesting the records. The high court affirmed but not for the reasons stated; rather, it relied on the fact that no designee inspected the records. This indicates that a properly appointed designee would be acceptable in enforcing the Ohio Public Records Act.

Furthermore, this court, in *State ex rel. Munici v. Kovacic* (June 15, 1994), Cuyahoga App. No. 64818, unreported, 1994 WL 264265, allowed an incarcerated convict to use a designee in gaining access to records pursuant to R.C. 149.43. In that case, the relator sent the respondent a letter specifying the records he sought. He also executed a certificate of identity, which stated his name, social security number, and date of birth and certified that he was requesting records pursuant to R.C. 149.43, and which he signed and had notarized. He also executed a power of attorney to his mother to do "every act, and thing whatsoever requisite and necessary to be done, in and about the premises, to all intents, and purposes as I might do, or could do if personally present in the acquisition of public records" for his R.C. 149.43 request. His mother received these documents and personally presented the written requests and power of attorney to the respondent. In refusing to dismiss the writ on the basis of *Fenley* and its progeny, the court emphasized the importance of the relator clearly naming the designee.

Nonetheless, allowing designees presents problems. If the record requester does not clearly and unequivocally identify the designee and state the scope of the

designee's powers and inquiry, demonstrated by reliable documentation, *i.e.*, a power of attorney, if the designee does not accept such authority, and if such reliable evidence is not presented to the records custodian, then both the government and the record requester could be prejudiced. The government will not know if it has fulfilled the seeker's request. Thus, despite its good faith efforts to comply with the law, the government could actually lay the foundation for unwanted litigation. Also, the government could become easy prey for malicious litigation in that a record-seeker could later say that the person who held himself out as his designee was in reality not his designee and that the government had not fulfilled his request.

Similarly, without declaring the designee and scope of his authority, the record-seeker could become a victim of confusion. For example, the wrong records could be obtained or the right records could be given to the wrong person. Although not presented by the facts *sub judice*, it is foreseeable that without properly limiting the designee's authority, an overzealous designee would be more than willing to spend his principal's money in copying records. Moreover, this court has seen cases in which thousands of records have been involved. Without proper safeguards, fulfilling public records requests using a designee is fraught with peril.

Some of these problems are well illustrated in the present case. Finnerty did not identify Vincent Calo as his representative in his requesting letter of August 3, 1993; he did not specify his representative in his complaint; and there is no evidence—no affidavit, no power of attorney, no certificate of identity, no letter saying Vincent Calo is his representative, nothing—from Finnerty that would establish that in August 1993, Finnerty appointed Vincent Calo as his representative. Without that reliable evidence, *i.e.*, a power of attorney, which could be presented to the respondent, the respondent had no way of knowing with certainty that by allowing Vincent Calo to inspect and copy the records, it would be fulfilling Finnerty's request. This is in sharp contrast to *Munici* in which the relator and his designee fulfilled, if not exceeded, all that should be done in naming a designee.

In *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, the Ohio Supreme Court ruled that in exercising its discretion in mandamus cases, a court must weigh the applicant's right, his conduct, the interests of third persons, the importance of the issues, public policy, the public's interest, the facts and circumstances of the case, and the equity and justice of the relator's case. *State ex rel. Mettler v. Stratton* (1941), 139 Ohio St. 86, 22 O.O. 56, 38 N.E.2d 393. In weighing these factors in the present case, the court notes the importance of the right to public records; however, the relator's failure to identify the designee and provide him reliable credentials from the

beginning created uncertainty and confusion. Accordingly, in the exercise of its inherent discretion, this court declines to issue the writ of mandamus.

Another factor in the court's exercise of its discretion is the public policy to establish certainty in the law. The state of Ohio is ill-served in allowing various, vague, uncertain and often sloppy procedures for obtaining public records. Permitting unspecified designees, who may or may not be authentic representatives and who may or may not faithfully exercise their charge in obtaining public records, would frustrate the goal of certainty in the law and public transactions. The legislature should resolve these issues or the Ohio Supreme Court provide explicit guidance. However, the courts, while not usurping the role of the legislature, must, in the absence of needed legislation, resolve the disputes brought before them in accordance with the law and public policy.

Accordingly, the fifteen remaining writs are dismissed. Relators to pay costs.

*Judgment accordingly.*

NUGENT, P.J., and PATTON, J., concur.

NAHRA, C.J., concurs in judgment only.