BOARD OF PARK COMMISSIONERS OF LAKE METROPARKS, Appellee,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Appellant, et al.▮

[Cite as *Lake Metroparks Bd. of Commrs. v. Norfolk
& W. Ry. Co.* (1999), 131 Ohio App.3d 412.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 98–L–081, 98–L–119.

Decided May 3, 1999.

414

*Talikka & Ischie* and *Leo J. Talikka,* for ·appellee.

*Blakely & Dean* and *J. Thomas Dean,* for appellant.

FORD, Presiding Judge.

This is an appeal from the judgment of the Lake County Court of Common Pleas, Probate Division. Appellant, Norfolk and Western Railway Company, appeals the trial court's judgment entry granting appellee, Board of Park Commissioners of Lake Metroparks, authority to appropriate an easement for a right-of-way and judgment entry confirming the verdict and final order of distribution.

On or about August 8, 1996, appellee passed resolution No. 96–61 declaring the necessity to appropriate a right-of-way across the Norfolk and Western Main Line, which crosses land currently owned by appellee.[1] The purpose of this right-of-way was to place a bike trail on the land. However, the proposed use of the land would cross a section of appellant's land. The former owner of appellee's land had a right-of-way across appellant's land. Appellant did not recognize appellee's right-of-way and refused to let appellee cross its land, stating that the original right-of-way was abandoned and that appellee has no authority to cross unless it proceeded according to Ohio law.

On February 19, 1997, appellee filed a complaint for appropriation to acquire an easement over and across appellant's right-of-way and to redefine and clarify appellee's interest in the land. Appellant filed a motion for summary judgment, which was overruled on February 23, 1998. Appellant filed a motion to dismiss the action on February 24, 1998, which was also overruled.

A hearing was held on February 26, 1998 before a magistrate, in which she determined the value of the taking, as was stipulated by both parties. The parties additionally stipulated that appellee did not have the right-of-way because it was abandoned by the former owner of the land. Further, the parties determined that the amount of compensation for the taking of the right-of-way

---

1. B & O Railroad formerly owned the portion of the land that now belongs to appellee. In 1990, B & O Railroad transferred the property to appellee.

was $8,050 plus the expense of the crossing. The parties agreed that $235,000 was the estimated cost for the crossing gates, switches, steel mesh fences and paving of the crossing. At the hearing, the parties disagreed about the cost of the entire bike trail. Appellant alleged that it would cost $660,000, whereas appellee asserted that it would cost about $2 million. In a judgment entry dated March 11, 1998, the trial court ruled that pursuant to the February 24, 1998 magistrate's report, appellee had the authority to appropriate land pursuant to R.C. 1545.11. Further, in an entry dated May 12, 1998, the trial court entered judgment for appellant in the amount of $8,050 as compensation for taking the right-of-way.

Appellant filed two notices of appeal. On May 29, 1998, appellant filed a motion to consolidate the appeals, which motion was subsequently granted by this court. Appellant now asserts the following as error:

"[1.] The trial court erred to the prejudice of [appellant] in overruling its motion for summary judgment and dismissal maintaining that [appellee] has no jurisdiction to pursue an appropriation proceeding for a bike trail easement at grade over a railroad right of way without first filing an action in common pleas court mandated by 4957.30 to 4957.31 of the Ohio Revised Code to establish the necessity and reasonableness thereof.

"[2.] The trial court erred to the prejudice of [appellant] in overruling its motion for summary judgment and dismissal maintaining that [appellee] is not an appropriate public entity having any authority to appropriate a right of way for a bike trail at grade across a railroad right of way."

In a summary judgment exercise, the Supreme Court of Ohio has repeatedly held that in order for a summary judgment to be granted, the moving party must prove:

" * * * (1)[N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199.

The court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276:

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. * * *"* (Emphasis sic.)

In its first assignment of error, appellant contends that the trial court erred in denying its motion for summary judgment and motion for dismissal because appellee did not follow the mandatory procedures of R.C. 4957.30 and 4957.31, and therefore, appellee may not proceed with an appropriation of the right-of-way for a grade crossing until the conditions precedent have been resolved.

R.C. Chapter 4957 generally deals with the elimination of crossings. As part of this statutory scheme R.C. 4957.30 provides:

"When it is desired by * * * any municipal corporation or authority constructing a new highway, that the * * * highway should be so constructed that they will cross each other at the same grade, or if it is desired to divert, change, or alter an existing public highway, a petition shall be presented by the party desiring such construction or diversion, to the court of common pleas of the county within which the crossing or diversion is situated. If it is the authority constructing the highway * * * the railroad company shall be the defendant."

However, certain sections of this Revised Code Chapter do provide for the establishment of crossings at grade. R.C. 4957.31 states:

"The petition referred to in section 4957.30 of the Revised Code shall set forth the reasons that are supposed to make such change or alteration necessary or desirable. The court of common pleas thereupon shall have the jurisdiction of the parties and the subject matter of the petition, and may proceed to examine the matter, either by evidence, by reference to a master commissioner, or otherwise. *If satisfied that such construction is reasonably required to accommodate the public, or to avoid excessive expense, in view of the small amount of traffic on the highway or railroad, and considering the future uses to which the highway may be adapted, or in view of the difficulties of other methods of construction, or for other good and sufficient reasons, the court shall make an order permitting such crossing at a grade or diversion to be established.* In such order, the court may prescribe that gates, signals, watchmen, or other safeguards shall be maintained by the railroad company, in addition to the signals and safeguards prescribed by law, and all such orders shall be binding upon the parties and be observed by them." (Emphasis added.)

According to R.C. 4957.31, the petition must set forth the reasons that are supposed to make such location necessary or desirable. This statute has been upheld as constitutional as against the argument that it delegates legislative functions to the court. *Cleveland & P.R. Co. v. Martins Ferry* (1915), 92 Ohio St. 157, 110 N.E. 642. In *Martins Ferry* the Supreme Court of Ohio stated that under G.C. 3677, which is now R.C. 4957.31:

" * * * no power to appropriate is conferred unless such appropriation will not unnecessarily interfere with the use of the property to be crossed, and the

appropriation proceeding cannot go forward until that question shall have been determined, whether the crossing be at the same or at separate grade, for it is jurisdictional." *Id.* at 161–162, 110 N.E. at 642–643.

However, appellee asserts that R.C. 4957.30 and 4957.31 are inapplicable. Instead, it argues that R.C. 1545.11 applies to the case at bar. R.C. 1545.11 reads:

"The board of park commissioners may acquire lands either within or without the park district for * * * conservation of the natural resources of the state * * * and to those ends may create parks, parkways, forest reservations and afforest, develop, improve, protect, and promote the use of same in such manner as the board deems conducive to the general welfare. Such lands may be acquired by such board, on behalf of said district * * * by appropriation.

" * * *

"This section applies to districts created prior to April 16, 1920."

Although R.C. 1545.11 appears to be specific about the reasons the board of park commissioners may acquire land, it is general in nature concerning the types of land that may be acquired, such as land held by a railroad company. On the other hand, R.C. 4957.30 and 4957.31 specifically deal with the procedure involved in the acquisition of a railroad company's property.

In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322–1323. It is a fundamental rule under Ohio law that a court must first look to the statute's language itself to determine the legislative intent. *S.R.,* 63 Ohio St.3d at 594–595, 589 N.E.2d at 1322–1323; *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461–462. In interpreting a statute, " '[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. * * *' " *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817, quoting R.C. 1.42. Courts do not have the authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. *State ex rel. Fenley v. Ohio Historical Soc.* (1992), 64 Ohio St.3d 509, 511, 597 N.E.2d 120, 122–123. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80–81.

"[U]nder the cardinal rule of statutory construction, 'all statutes which relate to the same general subject matter must be read *in pari materia.*' " *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, 615, citing *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567

N.E.2d 1018, 1024–1025. Therefore, when statutes are construed together, full application must be given to both statutes unless they are irreconcilable and in hopeless conflict. *Cater, id.*

We note that the Supreme Court of Ohio in *Johnson's Markets,* 58 Ohio St.3d at 35–36, 567 N.E.2d at 1025, set forth the following general rules of statutory construction in considering potentially conflicting provisions:

"In the judicial interpretation of potentially conflicting laws, certain statutory rules of construction must be considered. As a threshold we observe that R.C. 1.47 provides:

" 'In enacting a statute, it is presumed that:

" ' * * * *

" '(C) A just and reasonable result is intended;

" '(D) A result feasible of execution is intended.'

"Another statutory rule of construction which must be considered if, and when, statutes being reviewed by a court are found to be in irreconcilable conflict, is R.C. 1.51, which states:

" 'If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.' "

■ Contrary to the provisions of R.C. 1.51 and instructive case law, appellee's assertions invite us to ignore R.C. 4957.31 in its entirety, rather than attempt to reconcile the provisions of R.C. 4957.31 with 1545.11. Under R.C. 1.51, conflicting statutory provisions, where possible, are to be construed to give effect to both. Only where the conflict is irreconcilable does R.C. 1.51 mandate that one provision prevail over the other. *Johnson's Markets,* 58 Ohio St.3d at 36, 567 N.E.2d at 1025–1026.

■ In considering both of the foregoing statutory provisions, it is apparent that R.C. 1545.11, which allows appellee to appropriate property for the conservation of the state's natural resources and "to those ends that may create parks and parkways" and "develop, improve, protect, and promote the use of same in such manner as the board deems conducive to the general welfare," does not specifically deal with the express mechanics to be followed in an appropriation of a right-of-way for a railroad grade crossing. Although R.C. 1545.11 arguably gives the board of park commissioners the authority to appropriate property, R.C. 4957.31 governs the procedure that appellee and all public entities must follow to appropriate property owned by a railroad company. Therefore, R.C. 4957.31 was applicable to appellee when it attempted to acquire the land from appellant.

In the instant case, while we are aware that a board of park commissioners may acquire land for the general welfare of the public, courts must determine the necessity and desirability of the taking when the land involved is a railroad. "Absent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand." *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743, 746. Therefore, appellant's first assignment of error is with merit.

Appellant asserts in its second assignment of error that appellee was not the proper public entity having authority to cross over the railroad to complete the proposed bike trail. Pursuant to R.C. 1545.11, appellee is the proper public entity expressly authorized to use the power to appropriate. However, the trial court erred by not determining the necessity and desirability of acquiring the property as this matter specifically deals with railroads. Thus, we conclude that the arguments contained in appellant's second assignment of error lack merit.

For the foregoing reasons, appellant's first assignment of error has merit. Appellant's second assignment of error is not well taken. Therefore, the judgment of the Lake County Court of Common Pleas, Probate Division, is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY and NADER, JJ., concur.