[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.,* Slip Opinion No. 2019-Ohio-4130.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4130

THE STATE EX REL. PENLAND *v.* OHIO DEPARTMENT OF REHABILITATION AND CORRECTION ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.,* Slip Opinion No. 2019-Ohio-4130.]

*Mandamus—Public records—R.C. 149.43—Custodian of a record has no clear legal duty to transmit record for inspection at a location other than the business office where it is maintained—Statutory damages not available because request was not delivered by hand or certified denied, as required by version of statute in effect at time of request—Writ denied.*

(No. 2019-0018—Submitted July 9, 2019—Decided October 9, 2019.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this original action, relator, Alex Penland, an inmate at the Toledo Correctional Institution ("TCI"), seeks a writ of mandamus to compel respondents, Ohio Department of Rehabilitation and Correction ("DRC") and Sonrisa Sehlmeyer, to make available for inspection the contract under which a vendor, Aramark, is

permitted to sell food to inmates confined in Ohio prisons. Penland alleges that respondents completely ignored his request and that he is entitled to statutory damages. We deny the writ and the request for statutory damages.

**Background**

{¶ **2**} Penland alleges that on October 1, 2018, he made a public-records request to Sehlmeyer, the administrative assistant to TCI's warden, in which he asked to review the Aramark contract. Respondents do not dispute that the contract is a public record. And Sehlmeyer acknowledges that she is responsible for complying with public-records requests at TCI, which is a prison within the DRC system.

{¶ **3**} Penland did not receive an immediate response to his request, and as a result, he filed an inmate grievance on October 17. When the grievance process was not resolved to his satisfaction, he filed this original action. After respondents filed an answer to Penland's complaint, we granted an alternative writ. The parties have filed their briefs and evidence, and the matter is now ripe for decision.

{¶ **4**} Penland attached to his complaint a copy of his handwritten records request, which was accompanied by a "kite" form[1] that is dated October 1 and addressed to Sehlmeyer. But respondents contend that Penland did not actually make a public-records request on October 1. They rely on an affidavit in which Sehlmeyer testifies that she first learned of Penland's request when she received his mandamus complaint on January 18, 2019. She says she knows that her office did not receive Penland's request, because the kite attached to his complaint does not have her handwriting on it. She explains that her standard practice upon receiving a kite is to respond in writing and return it to the inmate.

{¶ **5**} Sehlmeyer also states in her affidavit that TCI does not have a copy of the Aramark contract and that a copy is kept at a DRC office in Columbus. Respondents presented evidence showing that on January 18—the same day

---

1. A "kite" is an internal communication between an inmate and prison staff. *See State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 3, fn. 1.

Sehlmeyer received the mandamus complaint—she sent Penland a letter explaining that she had not received his request, that the Aramark contract is in Columbus, and that she would get him a copy if he paid copying and postage charges of $12.70. Penland has not made the payment, because he says he asked only to review the Aramark contract, not to purchase a copy of it.

## Analysis

### *Preliminary issues*

**{¶ 6}** Before turning to the main issue presented, it is necessary to address two threshold issues that arise under respondents' arguments—first, whether a justiciable controversy exists and second, whether Penland actually requested the document from its custodian.

**{¶ 7}** Respondents argue that Penland's claim is moot because they fully complied with his request for information by responding to his request in January 2019. "In general, a public-records mandamus case becomes moot when the public office provides the requested records." *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 7. But respondents did not give Penland the requested record. Penland's claim is not moot because there still is a controversy about whether respondents satisfied their duty under R.C. 149.43.

**{¶ 8}** Respondents also argue that they had no duty to satisfy Penland's request because he directed it to Sehlmeyer, who works at TCI, and the Aramark contract is not maintained at TCI. They contend that Sehlmeyer and TCI, as noncustodians, had no duty with respect to Penland's request and that Sehlmeyer "went above and beyond" by volunteering to help Penland obtain a copy of the contract from DRC. Respondents fail to acknowledge that DRC—not TCI—is a respondent in this case. Sehlmeyer herself confirmed that TCI is part of DRC and that DRC is a custodian of the Aramark contract. In fact, Sehlmeyer's January 18 letter to Penland, in which she responded to his request, is on DRC letterhead. Under

these facts, we conclude that Penland properly directed his request through Sehlmeyer to DRC, the custodian of the Aramark contract.

*Inspection of a public record*

{¶ 9} We construe the Public Records Act, R.C. 149.43, "liberally in favor of broad access" to public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996). A person denied access to a public record may seek to compel compliance with R.C. 149.43 by filing a mandamus action. R.C. 149.43(C)(1)(b). To prevail on a claim for mandamus relief in a public-records case, a party must establish a clear legal right to the requested relief and a corresponding clear legal duty on the part of the respondents to provide that relief. *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 22-24.

{¶ 10} Relying on Sehlmeyer's testimony that she first learned of Penland's request after he filed his complaint, respondents initially argue that they had no clear legal duty to respond to the request because they never received it. This argument lacks merit. Even if respondents lacked knowledge of Penland's request when he claims to have made it in October 2018, they clearly knew about it in January 2019. Upon learning of the request, they responded directly to Penland by letter explaining how he could obtain the Aramark contract. Because respondents did not just defend against the lawsuit by arguing that they never received Penland's request but also chose to address his request on its own terms, we conclude that respondents assumed a duty to respond to the request.

{¶ 11} R.C. 149.43(B)(1) provides that "all public records responsive to [a public-records] request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours" and that "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and

4

within a reasonable period of time." The statute thus establishes a right to *inspect* a public record and a right to *obtain a copy* of one.

{¶ 12} When a copy of a record is requested, R.C. 149.43 generally places the financial burden of compliance on the requester by allowing a public office to charge its copying and delivery costs. R.C. 149.43(B)(1), (6), and (7); *see also State ex rel. Call v. Fragale,* 104 Ohio St.3d 276, 2004-Ohio-6589, 819 N.E.2d 294, ¶ 6. But "[t]he right of inspection, as opposed to the right to request copies, is not conditioned on the payment of any fee under R.C. 149.43." *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 624, 640 N.E.2d 174 (1994). This distinction is at the heart of Penland's argument. He contends that he cannot be required to pay $12.70 for a copy of the Aramark contract because he wants only to inspect it. He argues that under R.C. 149.43(B)(1), he has an absolute right to inspect the document at no cost to himself.

{¶ 13} Because the contract is maintained in Columbus, for Penland to inspect it, DRC (the document's custodian) would need to deliver it to TCI. Again, R.C. 149.43(B)(1) provides that all public records "shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." The question here is whether this duty to "prepare" a public record and to make it "available for inspection to any person" establishes a clear legal duty to transmit a record to a location other than the business office of its custodian.

{¶ 14} In examining the meaning of R.C. 149.43(B)(1), we have held that " 'available' is not synonymous with 'available by mail.' " *State ex rel. Fenley v. Ohio Historical Soc*., 64 Ohio St.3d 509, 511, 597 N.E.2d 120 (1992). Moreover, the obligation to prepare a public record and make it available for inspection applies at "all reasonable times during regular business hours." While not explicit, this language strongly suggests that the requester must travel to the business office of the record custodian. Indeed, although R.C. 149.43 establishes a duty to deliver public records upon request, R.C. 149.43(B)(7), that duty arises only when a *copy* of a

record has been requested. Accordingly, because Penland requested only to review the Aramark contract, he has not shown that R.C. 149.43(B)(1) establishes a clear duty to transmit that contract for inspection at a location other than the business office where it is maintained.

{¶ 15} Because Penland has not shown that respondents have a clear legal duty to deliver the Aramark contract to TCI for his inspection at no cost to him, we deny the writ of mandamus.

*Statutory damages*

{¶ 16} Penland argues that he is entitled to statutory damages under R.C. 149.43(C)(2) because respondents did not promptly respond to his request as required by R.C. 149.43(B)(1). Under the version of R.C. 149.43(C)(2) in effect when Penland made his request, statutory damages were available only if the request was made by hand delivery or certified mail. 2018 Am.Sub.H.B. No. 8. Because no evidence suggests that Penland delivered his request to Sehlmeyer by hand or by certified mail, we deny the request for statutory damages. *See Martin*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, at ¶ 9.

Writ denied.

O'CONNOR, C.J., and FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs, with an opinion.

FISCHER, J., not participating.

_____

**KENNEDY, J., concurring.**

{¶ 17} I concur in the judgment of the majority because I must, but it is troubling that the result in this case is that a person who has the right to view a public record cannot view that record. The General Assembly, in R.C. 149.43(B)(8), limits the right of a "person who is incarcerated" to inspect or obtain a copy of a public record concerning a criminal investigation, thereby implicitly

recognizing that an incarcerated person has a right to inspect or obtain a copy of public records that are unrelated to his or her criminal conviction. However, the General Assembly did not impose an affirmative duty upon a public-records custodian to deliver for inspection a public record sought by an incarcerated person to the institution housing that person or impose an affirmative duty upon the institution to transport the incarcerated person to the office of the custodian of the public record. Therefore, I concur in the denial of the writ of mandamus.

{¶ 18} The relator, Alex Penland, is incarcerated in the Toledo Correctional Institution. The record that Penland seeks is subject to disclosure to an incarcerated person but is held in the main office of respondent Department of Rehabilitation and Correction in Columbus. Penland complains that because he is indigent and cannot afford a copy of the record, he needs to inspect the record in person. The General Assembly makes no provision in the Public Records Act, R.C. 149.43, for an indigent person to obtain a public record at no cost. A public entity is required only to "make copies of the requested public record available to the requester at cost." R.C. 149.43(B)(1).

{¶ 19} R.C. 149.43(B)(8) provides an incarcerated person the right to inspect a public record, and its reference to "incarcerated" people demonstrates a recognition of the limitations on an incarcerated person's mobility and corresponding limited ability to personally inspect a public record. But the General Assembly did not provide a way to resolve that impasse. The Public Records Act neither requires the custodian to send the record to the institution housing the incarcerated person nor requires the state to transport the incarcerated person to the record.

{¶ 20} Therefore, an incarcerated person's right to personally inspect records is limited to those public records held in the facility in which he or she is incarcerated. Because the public record Penland seeks is not held in the institution housing him and because the General Assembly has not enacted a provision that an

indigent and incarcerated person—or any indigent person, for that matter—may obtain copies of public records without payment of costs, I concur in the denial of the writ of mandamus.

————————————

Alex Penland, pro se.

Dave Yost, Ohio Attorney General, and Christina E. Mahy, Assistant Attorney General, for respondent.

————————————