[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 619.]

THE STATE EX REL. THE WARREN NEWSPAPERS, INC. *v*. HUTSON, CHIEF OF POLICE, ET AL.

[Cite as *State ex rel. The Warren Newspapers, Inc. v. Hutson*, 1994-Ohio-5.]

*Public records—R.C. 149.43—Hours of availability for inspection of police department's public records—Request for public records must be complied with within a reasonable time—Copies of public records available at actual cost without charges for labor or employee time.*

(No. 93-1812—Submitted June 15, 1994—Decided October 26, 1994.)

IN MANDAMUS

———————————

{¶ 1} Relator, The Warren Newspapers, Inc., publisher of The Tribune Chronicle, filed a complaint for a writ of mandamus against respondents, Thomas D. Hutson, Warren Police Chief, H. Herbert Laukhart, Warren Safety-Service Director, and Clifford Evans, a Warren police captain. Relator seeks to compel respondents to, inter alia, (1) comply with R.C. 149.43 and produce all public records requested of the police department in the manner described by statute, (2) make all such public records available for inspection twenty-four hours a day, seven days a week, and (3) make copies of requested public records available at actual cost, not including charges for employee time.

{¶ 2} In 1990, the police department refused to permit relator to inspect its incident reports and further refused to reveal the home telephone numbers of its officers. As a result of these refusals, relator instituted a mandamus action in the Trumbull County Court of Common Pleas against the then-acting Warren Police Chief to compel disclosure of public records under R.C. 149.43. The parties agreed to a common pleas court consent order reflecting their settlement agreement. The order provided that the Warren Police Department and its police chief "shall

comply with Ohio Revised Code Section 149.43 and shall produce the public records requested of it in the manner described in that Section." The order further provided that the "parties may apply to the [Common Pleas] Court for enforcement of this Order or, upon good cause shown, for modification of this Order."

{¶ 3} In a letter dated April 6, 1993, two newspaper employees requested certain records from respondent Hutson, including (1) all internal investigations from 1988 to 1993, (2) all incident reports or traffic tickets written in 1992, and (3) the names and personnel files of all officers in the Warren Police Department. During May and June 1993, newspaper and police representatives discussed arrangements to review the requested public records. In a June 1, 1993 letter, Hutson, through the city law director, set the following conditions for the newspaper's review of records: (1) the review must be at a predetermined time so that the police department can have the records custodian and one clerical person available to oversee the retrieval, review, and refiling of the records, (2) only one reporter may be present to review such records, and (3) the city must be reimbursed for the time spent by the records custodian and clerical person to assist in the review.

{¶ 4} On June 28, 1993, Alyssa Lenhoff, the newspaper's projects editor, arrived at the Warren Police Department to inspect the records. After two hours of reviewing files, Lenhoff asked to schedule another appointment and was advised that another appointment could not be scheduled for several weeks, since the secretary would be on vacation and that The Tribune Chronicle could not send more than one person to inspect the requested records. By a letter dated that same day, addressed to "[A]ll Local Media," Hutson set forth a new policy for the inspection of public records of the Warren Police Department. Pursuant to this policy, Hutson noted that the police department had "established regular business hours for [the] Records Division File Room between 10:00 a.m. and 1:00 p.m. daily" and that "[s]ome documents may require editing before they are provided." Prior to this new

policy, newspaper employees had been able to request public records from 8:00 a.m. until 4:00 p.m. every day. The Warren Police Department operates twenty-four hours a day, seven days a week.

{¶ 5} On August 12, 1993, Lenhoff and reporter Jennifer Houtman went to the police department to continue their review of the requested records. They were informed by Evans and the city law director that approximately three hundred files were responsive to the newspaper's request for internal investigation records. Evans reviewed two files and redacted certain information before giving them to Lenhoff and Houtman for their review. On August 18, 1993, when Lenhoff and Houtman continued their review, Evans advised them that only eighteen files could be reviewed by the newspaper, since the remaining files contained information excepted from disclosure under R.C. 149.43. Evans further informed Lenhoff and Houtman that the police department would charge five dollars for a copy of an initial page of each separate file and twelve cents per page for every additional document in any particular file. After citing sexually offensive hypotheticals to Lenhoff and Houtman, Evans cancelled the review.

{¶ 6} Relator instituted this action in mandamus and during discovery procedures reviewed approximately ninety-five of the Warren Police Department's internal investigations files on December 28 and 29, 1993, which were fewer than the three hundred files previously specified by Evans and the city law director.

––––––––––––––––––

*Arter & Hadden, John B. Lewis, Gregory V. Mersol* and *Cynthia C. Schafer*, Cleveland, for relator.

*Gregory V. Hicks*, Warren Law Director, and *James E. Sanders*, Assistant Law Director, Warren, for respondent.

––––––––––––––––––

**PFEIFER, J.**

**{¶ 7}** Relator asserts in its propositions of law that (1) the Warren Police Department must make its public records available for inspection at all times, since it operates twenty-four hours a day, seven days a week, (2) the Warren Police Department must make its records available for inspection in the order in which they are organized, (3) the Warren Police Department must make its public records available "at cost," which does not include labor costs or charges for employee time, (4) the Warren Police Department's misconduct requires the broadest possible mandamus relief, and (5) relator is entitled to an award of attorney fees. Relator claims that since the settlement of its 1990 lawsuit, the police department has "repeatedly violated the public-records statute and its settlement agreement."

**{¶ 8}** Relator asserts in its first proposition of law that a municipal police department that operates twenty-four hours a day, seven days a week, must make its public records available for inspection at all times.

**{¶ 9}** In *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, we determined that R.C. 143.43 entitles a relator to a writ of mandamus in order to seek and secure public records when access to the records has been denied. Respondents contend that they have fully complied with R.C. 149.43.

**{¶ 10}** [1] R.C. 149.43(B) provides that "[a]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." The statute literally requires only that public records be made "available" for inspection "at all reasonable times during regular business hours." *State ex rel. Fenley v. Ohio Historical Soc.* (1992), 64 Ohio St.3d 509, 511, 597 N.E.2d 120, 122; *State ex rel. Nelson v. Fuerst* (1993), 66 Ohio St.3d 47, 48, 607 N.E.2d 836, 837-838. Therefore, the initial temporal restriction is "regular business hours" and the further restriction is "all reasonable times" during the first period. Although neither of these phrases is statutorily defined in the Public Records Act, R.C. 149.43 should generally be construed to further broad access, *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315,320, 631 N.E.2d 1048,

1053, and any doubt should be resolved in favor of disclosure of public records. *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 173, 527 N.E.2d 1230, 1232.

**{¶ 11}** Relator relies upon *Hengel v. Pine Bluff* (1991), 307 Ark. 457, 821 S.W.2d 761, to support its proposition that respondents have a duty to provide records at all times, since the Warren Police Department operates twenty-four hours a day, seven days a week. In Hengel, supra, 307 Ark. at 464, 821 S.W.2d at 765, the Arkansas Supreme Court held:

"Appellants' final argument is that it was error for the circuit court to hold that the public's access to the records of the Pine Bluff Police Department was limited to 8:00 a.m. to 4:00 p.m., Monday through Friday, excepting legal holidays. We cannot sustain that holding. The Arkansas FOIA provides that public records are to be open to inspection 'during regular business hours of the custodian of the records.' The Pine Bluff Police Department operates twenty-four hours a day, seven days a week. When the nature of an agency of the public of necessity operates twenty-four hours a day, it follows that in the absence of some showing to the contrary that those are its 'regular business hours.' "

**{¶ 12}** However, the Arkansas Public Records Act, as construed in Hengel, is broader than Ohio's Act, which allows the additional limitation of "all reasonable times" during the custodian's regular business hours.

**{¶ 13}** *State ex rel. Butler Cty. Bar Assn. v. Robb* (1990), 62 Ohio App.3d 298, 575 N.E.2d 497, upheld as not violative of Ohio's Public Records Act, a custodian's reduction of regular business hours of the office, apparently for all purposes and not just public records requests, to 8:30 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m. Monday through Friday, except holidays. One file room was open only until noon on those days, and the reduced business hours may have been due to budget cuts. State ex rel. Butler Cty. Bar Assn., supra, 62 Ohio App.3d at 300, 575 N.E.2d at 498.

**{¶ 14}** [2] In the case at bar, the evidence is that the Warren Police Department operates twenty-four hours a day, seven days a week, and that its policy prior to June 28, 1993, was to allow for inspection of public records from 8:00 a.m. until 4:00 p.m. every day. Shortly following relator's request and attempt to further inspect records, respondent Hutson purported to establish "regular business hours" for the "Records Division File Room" of 10:00 a.m. until 1:00 p.m. daily.

**{¶ 15}** Although respondents contend that the police department records division's regular business hours were reduced as a result of "budgetary and employee constraints," they presented no evidence to support this contention. A more reasonable inference from the evidence is that the hours were reduced and "a fictional division" created to retaliate for relator's records request and unfavorable press coverage concerning the Warren Police Department. Nevertheless, allowing records requests during all hours of the entire department's operations is unreasonable. Instead, the prior policy of 8:00 a.m. until 4:00 p.m. every day, i.e., approximating normal administrative hours, is a reasonable period during the department's regular business hours. Therefore, relator's first proposition is sustained in part and overruled in part.

**{¶ 16}** Relator asserts in its second proposition of law that respondents created an "artificially slow, complex and irrational process" and forced relator to accept the requested records in a "piecemeal state." Relator claims that since the Warren Police Department maintains the requested records in an "orderly, logical fashion," the files should be similarly provided to satisfy its public records request. The manner in which the records are organized can add to the value of information contained within records; when such value is added, a new set of enhanced public records is created that must be disclosed to the public. *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 460, 584 N.E.2d 665, 669. Although relator claims that the requested information is kept in an orderly, logical fashion, i.e.,

personnel files in alphabetical order and incident reports in chronological order, none of the evidence presented supports these assertions.

{¶ 17} Nevertheless, relator requested pertinent records on April 6, 1993 and on August 12, 1993. Thus, over four months following the initial request, (respondents continued to delay relator's inspection of the records by claiming a need to review files and redact exempt material. In Ohio, public records are the people's records, and officials in whose custody they happen to be are merely trustees for the people; therefore, anyone may inspect these records at any reasonable time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 81, 526 N.E.2d 786, 788.

{¶ 18} Further, " '[n]o pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of public records within a reasonable time. The respondent is under a statutory duty to organize his office and employ his staff in such a way that his office will be able to make these records available for inspection * * *.' " *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 111, 529 N.E.2d 443, 446, citing *State ex rel. Beacon Journal Publishing Co. v. Andrews* (1976), 48 Ohio St.2d 283, 289, 2 O.O.3d 434, 437, 358 N.E.2d 565, 569.

{¶ 19} Additionally, an anomaly exists in R.C. 149.43. All records must be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. R.C. 149.43(B). However, R.C. 149.43(A) envisions an opportunity on the part of the public office to examine records prior to inspection in order to make appropriate redactions of exempt materials. See R.C. 149.43(A)(2) and (A)(4); State ex rel. Natl. Broadcasting Co., supra, at paragraph two of the syllabus. "There is no requirement on the part of public agencies to create

records that are not already in their possession, or to store records in a particular medium in order to provide greater public access to the records," State ex rel. Margolius, supra, 62 Ohio St.3d at 461, 584 N.E.2d at 670, and "[a]ny increased financial burden" can usually "be passed on to the party making the request." Id. at 460, 584 N.E.2d at 669, fn. 4. Relator does not seek copies of everything requested. Instead, it wants to inspect everything requested and then decide whether to make copies following inspection. The right of inspection, as opposed to the right to request copies, is not conditioned on the payment of any fee under R.C. 149.43.

{¶ 20} Certainly, R.C. 149.43(B) is broad enough to permit relator's requested inspection. However, if respondents wish to comply with the request, they must make another copy of the original file (assuming there is no dual record system already in place) and then make redactions on the copies before allowing relator's inspection. Since relator may not ultimately request copies of the "copies" inspected, the financial burden in these circumstances is not passed on to the requesting party.

{¶ 21} Although this seems to force public offices to keep some sort of dual system that would retain their original files and yet still comply with public records inspection requests, any arguable burden in this regard is mandated by R.C. 149.43(B)'s requirement that "governmental units shall maintain public records in a manner that they can be made available for inspection in accordance with this division." Further, as mentioned previously, any doubt in construing R.C. 149.43(B) must be resolved in favor of disclosure of public records. State ex rel. Cincinnati Post, supra.

{¶ 22} [6] Here, respondents did not promptly comply with relator's request within a reasonable time. Over four months passed from the time of the original request, and respondents were still delaying the review process by claiming further need to review the records to make redactions of exempted materials. The request by relator here, which included all incident reports and traffic tickets written in

8

1992, is admittedly broad. R.C. 149.43 does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies. See *State ex rel. Zauderer v. Joseph* (1989), 62 Ohio App.3d 752, 577 N.E.2d 444. However, relator does not seek "complete duplication" of the Warren Police Department's files; it seeks files in certain categories from specific years in the same manner in which they are organized by respondents. See, e.g., *State ex rel. Waterman v. Akron* (Oct. 21, 1992), Summit App. No. 14507, unreported, 1992 WL 308525, where the appellate court upheld a request to inspect and copy traffic accident reports dated December 15, 1989 through March 15, 1990 as not overbroad.

{¶ 23} Respondents contend that "[g]iven the multiple year requests, the budgetary and employee constraints, one records custodian with other duties, [and] the size of the requests, * * * they did in fact make available for reasonably prompt inspection all the records kept in the manner in which they were kept." Respondents further assert that relator's request forces them to "review and redact over 32,000 pages of documents per year for 5 to 6 years." As relator aptly notes, respondents' assertions regarding the amount of documents and budgetary and employee constraints are not supported by submitted evidence.

{¶ 24} However, respondents' brief refers to their need to redact Social Security numbers as well as "confidential law enforcement investigatory records," R.C. 149.43(A)(2). To the extent that respondents still assert exemptions, an individualized scrutiny of the subject records and an in camera inspection is required pursuant to State ex rel. Natl. Broadcasting Co., supra, at paragraph four of the syllabus. See, also, *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 503, 589 N.E.2d 24, 28- 29. "When a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question." *State ex rel. Natl. Broadcasting Co., supra*, at paragraph four of the

syllabus. We subsequently held that in this context, " 'the court' obviously means the court in which such assertion is challenged * * *.' " *State ex rel. Beacon Journal Publishing Co. v. Radel* (1991), 57 Ohio St.3d 102, 103, 566 N.E.2d 661, 663. However, in *State ex rel. Natl. Broadcasting Co., supra*, and *Radel*, the relators were not parties to any similar common pleas court consent judgment. Therefore, if respondents still claim exemptions, this court will conduct the required in camera review of the requested documents, since we reserve continuing jurisdiction over the matter. Relator's second proposition is thus sustained in part and overruled in part.

{¶ 25} Relator asserts in its third proposition that copies of public records should be available at actual cost without charges for labor or employee time. Relator further contends that the $5 initial charge for the first page of any requested document does not reflect actual copying costs. R.C. 149.43(B) provides that "[u]pon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time." Although the court has not defined "at cost," it has been stated that a public office, in its sound discretion, may adopt a reasonable policy setting a fee for copies obtained from the public office, with the fee reflecting the actual costs involved in making a copy, unless the cost is otherwise set by statute. 1989 Ohio Atty.Gen.Ops. No. 89-073; cf. *State ex rel. Nelson v. Fuerst* (1993), 66 Ohio St.3d 47, 48, 607 N.E.2d 836, 838, where the court referred in dicta to "reasonable cost" in a public records case. Since the General Assembly could have, but failed to, specify "reasonable cost," we hold that R.C. 149.43(B) means "actual cost."

{¶ 26} Although the federal Freedom of Information Act ("FOIA") provides for specific fee provisions covering duplication, search, and review time, FOIA charges the news media for the costs of duplication only. See 1 Braverman, Chetwynd & Toran, Information Law (Supp.1990) 43-44, Section 3-3. Ohio does not specify any charge for search and/or review time in R.C. 149.43. As held by

10

one Florida court, the " 'supervision, observation, and watchfullness over the records is one of the prime duties that [a custodian] assumes when he takes the office, and the law fixes no fee or compensation therefor.' " *Sunbeam Television Corp. v. Bay Harbor Islands* (Fla.App.1981), 7 Med.L.Rptr. 1757, 1758, quoting *State ex rel. Davis v. McMillan* (1905), 49 Fla. 243, 248, 38 So. 666, 667. Since respondents are already compensated for performing their duties, and responding to public records requests is merely another duty, the cost set forth in R.C. 149.43(B) should not include labor costs regarding employee time. Respondents' policy to the contrary was inconsistent with that provision. Additionally, there is no evidence in the record that the charge of $5 per initial page of each separate file is tied to the actual copying costs. See, *e.g., State ex rel. Bonnell v. Cleveland* (Aug. 26, 1993), Cuyahoga App. No. 64854, unreported, 1993 WL 335426 (court relied on stipulated evidence regarding actual per-page copying costs consisting of costs of toner, paper and copying time). Relator's third proposition is sustained.

{¶ 27} Relator's fourth proposition asserts that broad mandamus relief is appropriate when a public agency has repeatedly and habitually violated R.C. 149.43. Relator is entitled to the relief previously specified, i.e., an in camera hearing if respondents still claim specific exemptions, the right to inspect requested public records in the same manner in which they are organized, copies at actual cost without charges for employee time, and the ability to inspect the Warren Police Department's requested public records from 8:00 a.m. until 4:00 p.m. every day.

{¶ 28} Relator contends in its fifth and final proposition of law that it is entitled to attorney fees. An award of attorney fees under R.C. 149.43(C) is not mandatory. State ex rel. Fox, supra, at paragraph two of the syllabus. Relator must demonstrate a sufficient benefit to the public to warrant an award of attorney fees, and the court may also consider the reasonableness of respondents' refusal to comply, since attorney fees are regarded as punitive. *State ex rel. Beacon Journal Publishing Co. v. Ohio Dept. of Health* (1990), 51 Ohio St.3d 1, 4, 553 N.E.2d

1345, 1347. We conclude from the evidence presented in this manner that the respondents, in retaliation for relator's public records request, drastically reduced the amount of time that records are available for inspection. Prior to relator's request, respondents allowed records to be inspected for an eight-hour period each day. After relator's request was made, respondents allowed public records to be inspected for only three hours each day. This conduct by respondents directly conflicts with the portions of R.C. 143.43 that require public records to be available for inspection at all reasonable times during business hours. Relator's request for attorney fees is granted.

{¶ 29} Accordingly, for the foregoing reasons, relator is granted a limited writ of mandamus as provided in this opinion.

*Writ granted in part*
*and denied in part.*

MOYER, C.J., and A.W. SWEENEY and WRIGHT, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur in part and dissent in part.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 30} It is difficult, given some of the language in the majority opinion, to know whether to concur or dissent. This is especially so when the ultimate judgment is one of "maybe yes and maybe no."

{¶ 31} Pursuant to R.C. 149.43(C), this action was filed as an original action in mandamus in this court. The verified complaint for writ of mandamus was filed on September 8, 1993. It is now a year later and, even with today's decision, relator still has not obtained the direct relief to which it is entitled. Mandamus has been designed as a remedy so that one who is entitled to issuance of such a writ will obtain relief complete in its nature, beneficial and speedy. The majority opinion falls short on all counts.

{¶ 32} I agree that a writ should issue. That writ should not be as "limited" as the majority makes it. We should decide that relator is, or is not, entitled to mandamus relief and then, if we decide in favor of relator, we should order the relief to which relator is entitled.

{¶ 33} In this case, we should order that:

(A) "Regular business hours" of the Records Division File Room of the Warren Police Department for purposes of inspection of public records be from 8:00 a.m. until 4:00 p.m. every day. This requirement would be nothing more than the policy of the department prior to June 28, 1993, the day the department embarked on its present course of action, which is clearly designed to impede the inspecting and obtaining of public records.

(B) The records sought by relator be immediately available for inspection by relator and any records for which respondents claim an exemption should forthwith be submitted to this court for an in camera inspection.

(C) The records be made available to relator for inspection in the order in which they are filed and/or organized.

(D) The charges for copies of records sought by relator be limited to the actual cost of copying.

(E) The relator be awarded reasonable and necessary attorney fees.

{¶ 34} Whatever parts of the foregoing the majority allows, I agree with the majority. Whatever parts of the foregoing the majority does not allow, I disagree with the majority.

{¶ 35} With one of the findings of the majority, I enthusiastically agree. The theory that a relator seeking public records pursuant to R.C. 149.43 must first show lack of an adequate remedy at law in order for mandamus to lie is simply not correct.

{¶ 36} The General Assembly has made very clear that the proper remedy to seek and secure public records, access to which has been refused, is mandamus.

R.C. 149.43(C). To continue perpetuation of the notion that a relator in mandamus seeking public records must jump through a series of hoops before such relator gets the relief mandated by the General Assembly is not something in which we should engage. The majority seems to put an end to this fiction. Good for the majority.

{¶ 37} With other suggestions of the majority, I vigorously disagree. I find creeping into our cases the notion that a public office has a "reasonable time" to produce public records for inspection. In the case at bar, the majority says: "Here, respondents did not comply with relator's request within a reasonable time." The statute, of course, does not provide for a "reasonable time" to produce records when only inspection is sought. R.C. 149.43(B) provides, in pertinent part, that "[a]ll public records shall be *promptly* prepared and made available for inspection to any person at all reasonable times during regular business hours." (Emphasis added.) The "reasonable times" language affects the "regular business hours" language and *not* the language providing for inspection. If copies are sought, then a "reasonable period of time" *is* accorded to make the requested copies. This position is buttressed by the last sentence of R.C. 149.43(B), which provides that "[i]n order to facilitate broader access to public records, governmental units shall maintain public records in a manner that they can be made available for inspection in accordance with this division."

{¶ 38} Finally, I continue to disagree with the proposition, as set forth in the majority opinion, that a "[r]elator must demonstrate a sufficient benefit to the public to warrant an award of attorney fees * * *." The statute does not require this and the amending process engaged in by the General Assembly clearly makes this point. Regarding this issue, I believe that the information set forth in my dissenting opinion in *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 112-114, 529 N.E.2d 443, 447-448, is instructive. Therein, it was stated:

"With regard to the holding of the majority in denying reasonable attorney fees to relators, I respectfully dissent.

14

"Given the specific language of the statute and the legislative history of the public records legislation, it is difficult for me to understand how the majority can reach its conclusion. The theory of any public disclosure law is not that an individual is benefited but that the public as a whole is the beneficiary of the government's business being open to the public. When a 'public office' refuses a legitimate and reasonable request to make available, pursuant to R.C. 149.43, public records, some individual or organization must be the catalyst to enforce the law. If we, as we are doing today, prevent the recovery of reasonable attorney fees for those who seek to enforce the law on behalf of all of us, then truly those self-appointed surrogates will be 'volunteers' in every sense of the word and will find themselves burdened with heavy expenses which they must personally underwrite. There will be little incentive, except possibly for news- gathering organizations, to seek enforcement of the law which, in effect, defeats the very purpose of the law.

"The General Assembly obviously realized this problem when it enacted, effective October 15, 1987, a new subdivision (C) to R.C. 149.43. In doing so, the General Assembly repealed R.C. 149.99, which had provided the penalty for violation of R.C. 149.43. As set forth in fn. 2 of the majority opinion, the now repealed penalty was that an aggrieved person 'may recover a forfeiture of one thousand dollars and reasonable attorneys fees for each violation.'

"Arguably, the use of the word 'may' by the legislature could be construed to make any award by a court, for violation of the law, discretionary. So what did the General Assembly do when confronted with this problem? It repealed R.C. 149.99 and enacted R.C. 149.43(C), which provides (in part) in no uncertain terms that a ' * * * person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit * * * responsible for the public record to comply with division (B) of this section and *that awards reasonable attorney's fees* to the person that instituted the mandamus action.' (Emphasis added.)

"In reviewing this language the majority says, '[t]his provision does not appear to require the award of attorney fees but makes such an award discretionary.' The majority misses the mark. The word 'may' in this newly revised section does not modify the reasonable-attorney-fees language. The word 'may' only modifies the verbiage 'commence a mandamus action.' It was placed in the statute so there could be no further question that an allegedly aggrieved party could use the speedy remedy of mandamus, a course of action which had been prevented by a majority of this court in *State, ex rel. Fostoria Daily Review Co., v. Fostoria Hosp. Assn.* (1987), 32 Ohio St.3d 327, 512 N.E.2d 1176. An allegedly aggrieved party can still file a civil action in the common pleas court to compel compliance with R.C. 149.43 but now may also use mandamus as a vehicle to bring about compliance.

"To support its decision regarding attorney fees, the majority cites Black's Law Dictionary and several cases, all of which involve something other than the Public Records Law. Further, in doing so, the majority ignores the explicit language of the Act and, in addition, ignores or overlooks the very precise language found in Section 5 of Am.Sub.S.B. No. 275, effective October 15, 1987, which provides:

" 'This act is hereby declared to be an emergency measure necessary for immediate preservation of the public peace, health, and safety. The reason for the necessity is that, unless the effect of the recent decision of the Ohio Supreme Court in *State, ex rel. Fostoria Daily Review Co., v. Fostoria Hosp. Assn.* (1987), 32 Ohio St.3d 323 [sic] [512 N.E.2d 1176] is immediately superseded and a civil action for a writ of mandamus available in all courts with original jurisdiction reestablished as the remedy to enforce the Public Records Law, *members of the general public could be denied access to public records in violation of the Public Records Law, and have no recourse other than to pursue an inadequate, statutorily prescribed remedy in the court of common pleas of injunctive relief, a forfeiture of $1,000, and a reasonable attorney's fees award. Therefore, this action shall go into immediate effect.*' (Emphasis added.)

16

"Accordingly, since the majority ignores the specific language and intent of the General Assembly, ignores the legislative history, frustrates the purpose of the Act and leaves aggrieved parties without a practical remedy, I must dissent from that portion of the majority opinion which denies relators their reasonable counsel fees.

"By today's decision, the majority leaves an offending governmental unit with no reason to comply with the Act. Any such unit will be defended at the taxpayers' expense since its attorney fees will be paid out of government funds. If the 'public office' loses and is not required to pay costs and reasonable attorney fees, then no penalty at all attaches since the General Assembly has repealed R.C. 149.99. Can the majority really believe it is following the will of the legislative branch of government?"

{¶ 39} This case is a perfect example of why the General Assembly provides for the awarding of attorney fees. With regard to this now four-year delay in producing records requested by relator, the majority finds that "[a] more reasonable inference from the evidence is that the hours were reduced and 'a fictional division' created *to retaliate for relator's records request and unfavorable press coverage concerning the Warren Police Department*." (Emphasis added.) Such a finding, while not needed to award attorney fees under the statute, certainly militates for such an award. I applaud the majority for seeing its way clear to make such an award in this case. The majority should have done so, however, based upon the dictates of the law rather than on the basis of some amorphous, subjective weighing process that requires a case-by- case determination by whoever happens, at any particular moment, to be sitting in judgment.

{¶ 40} Accordingly, I believe we should use this case as a vehicle to set forth firm guidelines for the production of public records when sought by "any person" in other than a pending criminal proceeding. See *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83. Our failure to do so will permit

to continue the far too pervasive practice of deny, delay and frustrate for the purpose of preventing the inspection and release of public records. Worse yet is the failure to provide absolutely for a penalty by way of attorney fees, which only further encourages obstructionism.

**{¶ 41}** In *Steckman, supra*, we took strong action regarding the release of records in pending criminal matters. We should take equally strong action in this case to set the standards for release of public records when there is no pending criminal proceeding. We should enforce the statute as written unless and until the General Assembly, in its wisdom, changes the law. Because I believe we do not do so in this case, I respectfully concur in part and dissent in part.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing opinion.

———————————