DECISION AND JUDGMENT ENTRY
Arthur W. Pethtel, III appeals his convictions for violating R.C. 2923.24 (possessing criminal tools) and R.C. 2913.02 (theft). He argues that the trial court should have dismissed the charges because the state failed to preserve exculpatory evidence. Because we find that the evidence was only potentially useful evidence and there is no evidence of bad faith on the part of the Marietta Police Department ("MPD") in releasing the stereo to the victim, we disagree. He also argues that his convictions are against the manifest weight of the evidence. Because we find that the jury did not clearly lose its way and create a manifest miscarriage of justice by choosing to believe Terry Holtz's testimony, we disagree. Accordingly, we affirm the decision of the trial court.
 I.
On September 10, 1991, the State charged Pethtel with theft and possession of criminal tools. On October 8, 1991, Pethtel filed a motion requesting that the state preserve any exculpatory evidence and test the stereo the state accused Pethtel of stealing for fingerprints. At the motion hearing, Pethtel learned that the MPD released the stereo to the victim, Donald Burchett on the day after he filed his motion. The MPD had not tested the stereo for fingerprints. Pethtel orally moved that the trial court dismiss the charges against him because the state had failed to preserve material exculpatory evidence. At the hearing, MPD Officer Ronald Nohe testified that he did not test the stereo for fingerprints because it was not necessary to identify the perpetrators of the theft. He explained that MPD Captain Dutcher released the stereo to Burchett on October 9, 1991. He also explained that by the time Pethtel asked the state to test the stereo for fingerprints, at least three to four people would have touched the stereo, leaving their own fingerprints.
On October 22, 1991, the trial court denied Pethtel's motion to dismiss.
The trial court held a jury trial on October 22, 1991. Holtz testified that on July 26, 1991, he went to the Waterford Lounge in Marietta. Pethtel showed up with some friends and later asked Holtz for a ride home. Holtz agreed. Once they got into the car, Pethtel began to tell him about a broken down car that had a new stereo system in it. Pethtel promised that if Holtz took him to the car and waited on him, that he would get the stereo out of the car. Holtz drove to the car. Pethtel got out and entered the broken down car through the driver's side window, removed the stereo and put it in Holtz's car. Then Pethtel told Holtz that he wanted to get the speakers out of the broken down car's trunk. Holtz got the jack out of his car and gave it to Pethtel, who began to beat the trunk lock. As a MPD car pulled up, Pethtel threw the jack under Holtz's car. Holtz and Pethtel told the police that they were trying to fix Holtz's car.
During his testimony, Holtz admitted that he served as a look-out during the theft, but claimed that he never touched the car. Holtz testified that he did not know Pethtel well and did not know the car was broken down until Pethtel told him.
On cross-examination, Holtz admitted that the state promised to drop the charge of possession of criminal tools and recommend a thirty-day sentence on the theft charge. He also testified that even though he did not know Pethtel very well, Pethtel persuaded him to help with the theft.
Burchett testified that he knew Pethtel for about ten years. He explained that Pethtel was with him when his car broke down and commented on his new stereo. He testified that he did not give Pethtel permission enter his car, take his stereo, or beat his car.
Officer Nohe testified that at about midnight on July 26, 1991, he drove along Gilman Street in Marietta and noticed an abandoned vehicle. When he later returned to the area, he noticed Holtz's car parked very close to the abandoned vehicle. Officer Nohe parked his car and quickly got out to investigate. He saw two men, later identified as Holtz and Pethtel, squatting down on the passenger side of Holtz's car. He circled the abandoned vehicle and noticed that a pair of handcuffs that were hanging from the rearview mirror were moving back and forth. From this, Officer Nohe concluded that the men had bothered the abandoned vehicle. Officer Nohe then looked inside the vehicle and noticed that the stereo was gone, the drivers' side door was unlocked, the back seat was pulled forward, and the trunk was severely damaged. Officer Nohe found the trunk lock and paint chips on the ground near the trunk of the abandoned vehicle.
Officer Nohe then searched Holtz's car and found the stereo behind the drivers' seat on the floorboard. He noticed the jack under Holtz's car. Upon examining the jack, Officer Nohe observed paint on the jack that was similar to that of the abandoned vehicle. Officer Nohe questioned the men. Holtz blamed Pethtel and Pethtel blamed Holtz for the incident.
Officer Nohe tested the abandoned vehicle's drivers' side window for fingerprints, but none of the prints matched Holtz or Pethtel. Officer Nohe claimed that he did not need to fingerprint the stereo because he had identified the people involved in the theft.
Pethtel testified that he and Holtz were friends and had known each other since high school. He claimed that Holtz was giving him a ride home when the car started shaking. Holtz pulled over right beside Burchett's car and started looking in Burchett's car. According to Pethtel, Holtz said that he wanted the stereo. Pethtel explained that he told Holtz he wanted no part of it and sat on the nearby guardrail. Holtz then entered Burchett's car through the window, removed the stereo and put it in his own car, got a jack from his trunk and beat Burchett's car trunk until it popped open. Pethtel testified that he had always told the truth about what happened.
The jury found Pethtel guilty of both charges. The trial court set a sentencing hearing for November 21, 1991. However, Pethtel did not appear and did not return to court until 1999, when he was extradited from Texas. In January 2000, the trial court sentenced Pethtel to one year on each conviction, to be served concurrently. Pethtel appeals and asserts the following assignments of error:
The trial court erred in denying appellant's motion to dismiss, based on the state's failure to preserve exculpatory evidence, in violation of appellant's due process rights under the Sixth and Fourteenth Amendments to the U.S. Constitution, and under Article I, Section 16, of the Ohio Constitution.
Appellant's conviction was against the manifest weight of the evidence.
 II.
In his first assignment of error, Pethtel argues that the state violated his constitutional due process rights by failing to preserve the stereo. He asserts that the fingerprints on the stereo could have established which one of the suspect's conflicting stories was true.
If the state "suppresses, or fails to preserve materially exculpatory
evidence, then a criminal defendant's due process rights have been violated." State v. Lewis (1990), 70 Ohio St.3d 624, 634 (emphasis in original). "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood
(1988), 488 U.S. 51, 58. See, also, State v. Treesh (2001),90 Ohio St.3d 460, 475.
Thus, we must engage in a two-step inquiry. Lewis. First, we determine whether the evidence suppressed or lost by the state was materially exculpatory or merely potentially useful. If we determine that the evidence was merely potentially useful, then we must determine whether the state suppressed or lost it in bad faith. Lewis.
 A.
Evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Johnson (1988),39 Ohio St.3d 48, paragraph five of the syllabus, citing United Statesv. Bagley (1984), 473 U.S. 667. See, also, Treesh at 475.
Pethtel argues that if the police had tested the stereo for fingerprints, the tests would have indicated which suspect was telling the truth. However, we find that such evidence would be just as likely to inculpate Pethtel as exculpate him because it is unclear what the results of the tests would have shown. See Youngblood (sexual assault victim's clothing, which contained semen that was improperly preserved for DNA or blood-grouping tests, was merely potentially useful evidence); State v.Groce (1991), 72 Ohio App.3d 399 (slides and swabs of victim's vagina, which were improperly preserved for testing, were only potentially useful evidence; Lewis (rape victim's jeans, which may or may not have been missing a button, was only potentially useful evidence to impeach victim).
Because the results of the fingerprinting tests would be just as likely to inculpate Pethtel as exculpate him, we find that there is not a reasonable probability that, had the state disclosed the results of the fingerprint analysis of the stereo been disclosed to Pethtel, the jury would not have convicted him. Accordingly, we find that the stereo was not materially exculpatory, but was merely potentially useful evidence.
 B.
Pethtel argues that the State acted in bad faith by releasing the stereo without fingerprinting it because: (1) he filed his motion to fingerprint the stereo before the MPD released it; (2) Officer Nohe was familiar with both suspects; (3) Officer Nohe immediately suspected that both suspects had bothered the abandoned vehicle; and (4) Officer Nohe believed both suspects were guilty of theft.
We first note that Pethtel limited the basis of his oral motion to suppress to the theory that the evidence was exculpatory and did not allege that the MPD released the stereo in bad faith. Because Pethtel did not argue in the trial court that the MPD acted in bad faith, he has waived this argument on appeal. Stores Realty v. Cleveland (1975),41 Ohio St.2d 41, 43; Lippy v. Society Natl. Bank (1993),88 Ohio App.3d 33.
Assuming arguendo that Pethtel did not waive the argument, he has failed to show that the MPD acted in bad faith by releasing the stereo to the victim without testing it for fingerprints. There is no evidence that Dutcher knew that there was a pending motion to test it for fingerprints. Officer Nohe testified that it was not necessary to test the stereo for fingerprints. Further, we will not infer bad faith simply because Officer Nohe knew the suspects or because he suspected them both of being involved in the theft. In sum, Pethtel has failed to show that the MPD acted in bad faith.
 C.
Having determined that the stereo was potentially useful evidence and that there is no evidence that the MPD acted in bad faith in releasing it without fingerprinting it, we find that the state did not violate Pethtel's due process rights. State v. Keith (1997), 79 Ohio St.3d 514,523, (no violation of due process when defendant fails to show bad faith on part of police who failed to preserve potentially useful evidence). Accordingly, we overrule Pethtel's first assignment of error.
 III.
In his second assignment of error, Pethtel argues that his convictions are against the manifest weight of the evidence. He argues that Holtz's testimony is not credible because it is absurd and Holtz had every motive to lie. Pethtel asserts that it is absurd that Holtz would allow a casual acquaintance to persuade him to take part in the theft.
In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. In making such a determination, we sit as a thirteenth juror. Thompkins at 387, citingTibbs v. Florida (1982), 457 U.S. 31, 42. However, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Thompkins at 387, quoting Martin at 172.
After reviewing the entire record, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice by choosing to believe Holtz's testimony. While it is somewhat distressing that Holtz would allow a casual acquaintance, Pethtel, to convince him to take part in a theft, it is not unbelievable. Accordingly, we find that Pethtel's convictions were not against the manifest weight of the evidence and overrule his second assignment of error.
 IV.
In sum, we overrule both of Pethtel's assignments of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________ Roger L. Kline, Judge
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.