[Cite as *State ex rel. Gatehouse Media Ohio Holdings II., Inc. v. Stark Cty. Health Dept.*, 2025-Ohio-230.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE EX REL. GATEHOUSE MEDIA OHIO HOLDINGS II, INC D/B/A THE COLUMBUS DISPATCH | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| Relator | |
| -vs- | Case No. 2024CA00132 |
| STARK COUNTY HEALTH DEPARTMENT | O P I N I O N |
| Respondent | |

CHARACTER OF PROCEEDINGS:     Writ of Mandamus

JUDGMENT:     Granted in part; Denied in part

DATE OF JUDGMENT ENTRY:     January 24, 2025

APPEARANCES:

For Relator

JOHN C. GREINER
GRIFFIN R. REYELTS
FARUKI PLL
201 East Fifth Street, Suite 1420
Cincinnati, Ohio 45202

For Respondent

KYLE STONE
Stark County Prosecuting Attorney

DEBORAH A. DAWSON
AARON J. VIOLAND
JESSICA L. LOGOTHETIDES
Assistant Prosecuting Attorneys
110 Central Plaza, South, Suite 510
Canton, Ohio 44702

*Hoffman, J.*

**{¶1}** On August 27, 2024, Relator Gatehouse Media Ohio Holdings II, Inc., d/b/a The Columbus Dispatch ("Gatehouse"), filed a Complaint for Writ of Mandamus. Gatehouse requests the Court issue a writ of mandamus ordering Respondent Stark County Health Department to produce "an electronic copy of the list of all animal bites reported to [the Stark County Board of Health] during 2024." Complaint, ¶ 3.

**{¶2}** For the following reasons, we find Gatehouse is entitled to the writ of mandamus as it pertains to pet owner names, but we deny the writ of mandamus as it pertains to bite victim names.

## I. Background

**{¶3}** On July 3, 2024, Gatehouse made its initial request regarding animal bites reported to the Stark County Board of Health ("BOH"). On July 5, 2024, the BOH refused to produce the requested records. Counsel for the BOH indicated, in a letter, it could not release any part of the requested records under R.C. 149.43(A)(1)(a) – the medical records exclusion and R.C. 149.43(A)(1)(v): - "'records the release of which is prohibited by state law[,]'" – citing R.C. 3107.17(B). The letter further stated:

> Protected health information obtained by and reported to a board of health which reveals the identity of the individual who is the subject of the information or could be used to reveal that individual's identity is confidential and cannot be released without a written consent of the individual.
>
> Stipulated Exhibit A-1.

{¶4} In a letter dated July 30, 2024, counsel for the BOH again stated it would not produce the requested information reiterating the protections of R.C. 3701.17, concluding health information received by a board of health is broader than medical records or HIPPA protections. Stipulated Exhibit A-2. On August 2, 2024, counsel for Gatehouse emailed the BOH's counsel and suggested the BOH provide the requested records with the bite-victim identity redacted. Counsel pointed out other health departments (Franklin, Summit, and Hamilton Counties and City of Canton) have done that in response to Gatehouse's request. Stipulated Exhibit A-3.

{¶5} On August 5, 2024, counsel for the BOH responded by email. Counsel attached the 2023 Animal Bite Information, which was the same report Gatehouse received from Canton Public Health. Stipulated Exhibit B. This report summarized bites for different categories of animals (dogs, cats, ferrets, livestock, raccoon, skunk, bat, other domestic animals, and other wild animals). The report did not contain any owner or victim information. Counsel for the BOH indicated if Gatehouse still wanted additional information from the reports, the BOH would need to redact all the victim information, as well as the owner information, "because one could use the owner information to find out who the victim was. That would be a violation of RC 3701.17 . . ." Stipulated Exhibit A-4.

{¶6} On August 6, 2024, counsel for Gatehouse responded by email and indicated owner information should be produced. Stipulated Exhibit A-5. On August 13, 2024, counsel for the BOH responded to the public records request with an attached spreadsheet. Stipulated Exhibit C. The spreadsheet contained additional details relating to animal bite cases. Owner and victim names were not included in this production. Also,

this document was not maintained as a public document by the BOH but was produced in response to Gatehouse's request.  Stipulated Exhibit A-6.

**{¶7}**  On August 16, 2024, counsel for Gatehouse indicated his client did not agree with the BOH's interpretation of R.C. 3701.17 as it pertains to dog bite owners or victims, specifically stating: "As to owners, there is no basis to conclude that anyone's physical or mental health status will be revealed by disclosure of this information. And as to victim's there is a sufficient range of severity with a dog bite, that it is not reasonable to conclude that disclosure of the victim's name would disclose any health condition." Stipulated Exhibit A-7.

**{¶8}**  On August 19, 2024, counsel for the BOH emailed Gatehouse's counsel and indicated her legal advice to her clients remained the same. Stipulated Exhibit A-8. Gatehouse commenced this action on August 27, 2024. Gatehouse requests the issuance of a writ of mandamus directing the BOH to comply with R.C. 149.43 and allow public access to the requested records; an award of costs and reasonable attorney fees; an award of statutory damages under R.C. 149.43(C)(2) and any other relief that is just and equitable.

## I. Analysis

### A. Mandamus elements

**{¶9}**  "Mandamus is an extraordinary remedy, to be issued with great caution and discretion and only when the way is clear." *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977). "To be entitled to a writ of mandamus, a relator must carry the burden of establishing that he or she has a clear legal right to the relief sought, that the respondent has a clear legal duty to perform the requested act, and that the relator has

no plain and adequate remedy in the ordinary course of law." (Citation omitted.) *State ex rel. Van Gundy v. Indus. Comm.*, 2006-Ohio-5854, ¶ 13. Relator has the burden of establishing all three elements by clear and convincing evidence. (Citation omitted.) *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2018-Ohio-4668, ¶ 6.

### *B. Public record requests*

{¶10} Under Ohio's Public Records Act, public offices within the State of Ohio must make copies of public records available to any person upon request within a reasonable time. *Ludlow v. Ohio Dept. of Health*, 2024-Ohio-1399, ¶ 11, citing R.C. 149.43(B)(1). However, the act includes exceptions to the definition of a public record, including an exception for "[r]ecords the release of which is prohibited by state or federal law." *Id.*, citing R.C. 149.43(A)(1)(v).

{¶11} Here, Gatehouse initially requested an electronic copy of the list of all animal bites reported to the BOH in 2023. Through correspondence between Gatehouse and the BOH submitted by the parties as stipulated evidence, it now appears Gatehouse only seeks the names of pet owners and not the names of bite victims. *See* Stipulated Exhibit A-5. However, for purposes of this action, we will address the release of information as it pertains to both pet owners and bite victims.

{¶12} The BOH maintains Ohio public-records law forbids officials from disclosing medical records and "records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(a); R.C. 149.43(A)(1)(v). Thus, the BOH concludes it cannot provide pet-owner information because it could lead to the victim's identity and reveal protected health information within the meaning of R.C. 3701.17(A)(2). The BOH also maintains

public policy dictates the identity of bite victims must remain confidential to encourage private individuals to continue reporting potential exposure to rabies.

{¶13} R.C. 3701.17(A)(2) defines "protected health information" as:

(2) [I]nformation, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:

(a) The information reveals the identity of the individual who is the subject of the information.

(b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using the information alone or with other information that is available to predictable recipients of the information.

### 1. The BOH did not meet its burden disclosure of pet owner information will lead to the discovery of "protected health information" about bite victims.

{¶14} Gatehouse maintains the information provided in the animal exposure forms does not describe a past, present or future physical or mental health status or condition as it pertains to pet owners. We agree. As to owners, providing the name of the animal owner involved in a bite report does not describe a victim's physical or mental status or condition. It reveals only a Bite Report Form was filed and provides the owner's name, address and phone number. The release of this information does not directly result in

revealing the bite victim's identity or past, present or future physical or mental health status or condition.

**{¶15}** The BOH contends the release of pet-owner information could lead to the bite victim's identity and protected health information being revealed within the meaning of R.C. 3701.17(A)(2), *i.e.* the bite-victim's identity could be revealed by contacting the pet owner and asking for the bite-victim's identity.

**{¶16}** In response, Gatehouse cites *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770. In *Jones-Kelley*, the Cincinnati Enquirer made a public records request seeking "an electronic copy of the ODJFS database containing the names and addresses of all foster associations, institutions or homes certified by the state under O.R.C. Chapter 5103." *Id.* at ¶ 2. ODJFS partially responded to the request but refused to provide a list of the names and addresses of certified foster homes. *Id.* According to ODJFS, approximately 80 percent of all foster homes had a foster child in the past year. *Id.*

**{¶17}** ODJFS did not present evidence these foster homes had either applied for or received financial assistance from the federal or state government. *Id.* Jones-Kelley eventually sought relief by filing a writ of mandamus in the Ohio Supreme Court. *Id.* at ¶ 3. The Supreme Court concluded absent any exception to disclosure under the Public Records Act, the Enquirer was entitled to a copy of the requested names and addresses of certified foster caregivers in the state. *Id.* at ¶ 8.

**{¶18}** In its decision, the Court began by noting R.C. 149.43 is to be construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *Id.* at ¶ 5, citing *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d

374, 376 (1996). The custodian has the burden to establish the applicability of an exception. *State ex rel. Carr v. Akron*, 2006-Ohio-6714, ¶ 30. "A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *Jones-Kelley* at ¶ 10.

{¶19} ODJFS argued the information requested by Jones-Kelley was excepted under state and federal laws prohibiting the disclosure of the names and addresses of individuals receiving "public assistance," which ODJFS maintained included foster-care maintenance payments. *Id*. at ¶ 14-15. In addressing this argument, the Court noted the ODJFS director had not introduced evidence all the certified foster caregivers in the requested records had received or were receiving foster-care maintenance payments or had applied for them at the time of the Enquirer's request. *Id*. at ¶ 22.

{¶20} The Court concluded:

> Therefore, the director has not yet met her burden to establish that the disclosure of the list of names and addresses of certified foster caregivers would necessarily disclose which, if any of the certified foster caregivers are, in fact, public-assistance recipients or applicants. The mere fact that ODJFS has certified certain individuals as foster caregivers does not make these individuals "assisted" under the state plan for purposes of federal law or "public-assistance recipients" or "applicants" under state law.
>
> * * *
>
> [A]bsent evidence showing that a list of the names and addresses of certified foster caregivers discloses which, if any, of those caregivers is a

public-assistance recipient, the list is not excepted from disclosure under federal and state law. (Citations omitted.)

**{¶21}** *Jones-Kelley* at ¶23-24.

**{¶22}** The Cincinnati Enquirer could have used the list of certified foster caregivers to ask them if they were receiving state or federal financial assistance.  Those individuals would not be required to volunteer such information.

**{¶23}** Similarly, here, the pet owner is not required to reveal the bite-victims' identity.  This "other information," while potentially leading to the discovery of the bite victim's identity should the pet owner volunteer such additional "other information" is not "available" in the sense so as to render the identity of the bite victim automatic or directly discoverable.  There is a difference between the disclosure of information which could potentially be used in combination with other information to identify the bite victim and providing information which makes the excepted information, i.e., the bite victim's identity, "available" to the recipient of the information (Gatehouse).

**{¶24}** Here, as in *Jones- Kelley*, we find the BOH did not meet its burden of showing disclosure of an owner's identity would lead to the discovery of "protected health information" for every, let alone any, bite-victim.

**{¶25}** We find the BOH has failed to prove the pet owners' names fall squarely within the exception and we adhere to the Ohio Supreme Court's directive to liberally construe the statute in favor of broad access, resolving any doubt in favor of disclosure of public records.

**{¶26}** For these reasons, we grant Gatehouse's writ of mandamus as it pertains to the release of pet owner names.

### 2. Release of bite-victim identities is prohibited under R.C. 3701.17(A)(2) because such information relates to a person's physical status or condition.

**{¶27}** Gatehouse's mandamus action also seeks the identity of bite victims. However, by disclosing the identity of a bite victim, Gatehouse has made it impossible for the BOH to comply with their request without disclosing information describing an individual's "physical or mental status or condition" within the meaning of R.C. 3701.17(A)(2)(a).

**{¶28}** The Ohio Supreme Court reached a similar conclusion in *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Grp.*, 2016-Ohio-556. In *Lipson O'Shea*, a law firm made a public records request seeking "documentation or information of all homes in 2008, 2009, 2010 and 2011 in Cuyahoga County where a minor child was found to have elevated blood lead levels in excess of 10 mg/DI [sic, mg/dl]." *Id.* at ¶ 1. In addressing a mandamus action filed by Lipson O'Shea, the Ohio Supreme Court declined to order release of the requested information. The Court stated:

> By linking the request to specific blood lead levels, Lipson O'Shea has made it impossible for Cuyahoga County BOH to comply without disclosing information that undeniably describes an individual's "physical or mental status or condition" within the meaning of R.C. 3701.17(A)(2). * * * It is undeniable that the address of a home where a child has an elevated blood level can be used to identify the afflicted child. Even if it were possible

to comply with the request by redacting protected health information, the release of merely the address of a house in response to the public-records request at issue means that a child at the house had "elevated blood levels in excess of 10 [mg/dl]," which is protected health information.

**{¶29}** *Id.* at ¶ 10.

**{¶30}** Likewise, here, Gatehouse's request links a person's name to animal bites which logically describes a person's physical health status or condition. The BOH further argues a bite victim's potential exposure to rabies should be considered "protected health information" under R.C. 3701.17(A)(2). We find no need to make that determination having found a report of a bite qualifies as "protected health information" as to bite victims.

**{¶31}** Therefore, we deny Gatehouse's writ of mandamus as it pertains to the release of bite-victim names.

*C. Gatehouse is not entitled to an award of statutory damages.*

**{¶32}** Under R.C. 149.43(C)(2), Gatehouse is entitled to statutory damages if (1) it transmitted a written public-records request by hand delivery, electronic submission, or certified mail; (2) Gatehouse made the request to the BOH or person responsible for the requested records; (3) Gatehouse fairly described the records sought; and (4) the BOH failed to comply with an obligation under R.C. 149.43(B).

**{¶33}** Gatehouse has the burden of proving, by clear and convincing evidence, it delivered its public-records request to the BOH "by hand delivery, electronic submission, or certified mail [.]" However, Gatehouse has not met this standard as we do not know, from the record, how it delivered its public-records request. The record only establishes Gatehouse made a request for records seeking "an electronic copy of the list of all animal

bites reported to [the Stark County Board of Health] in 2024." Complaint, ¶ 3. In an affidavit attached to the Complaint for Writ of Mandamus, reporter Laura Bishoff did not indicate by what means she made the request. She merely avers she made a public records request on July 3, 2024, to the Stark County, Ohio Board of Health. *See* Complaint, Exhibit 1, ¶ 3. Further, the Joint Stipulations filed by the parties also do not indicate the means used to make the public-records request. Paragraph 3 of the Joint Stipulations merely indicates Ms. Bischoff made a public records request. Finally, none of the documents attached to the Complaint or Joint Stipulations indicates how Gatehouse made its request.

**{¶34}** In *State ex rel. Owens v. Gifford*, 2024-Ohio-5468, ¶ 13 (5th Dist.), this Court reached a similar conclusion stating, "Owens failed to establish that he delivered his public records request to Gifford by certified mail – or any other means of delivery permitted under R.C. 149.43(C)(2)."

**{¶35}** Here, because Gatehouse failed to establish, by clear and convincing evidence, the manner in which it delivered its public-records request to the BOH, we find Gatehouse failed to satisfy its burden under R.C. 149.43(C)(2) and therefore, we deny its request for statutory damages.

*D. Gatehouse is entitled to an award of court costs.*

**{¶36}** Gatehouse also seeks an award of court costs. R.C. 149.43(C)(3)(a)(i) provides: "If the court orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)], the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive." Because we

granted Gatehouse's writ of mandamus in part, we award Gatehouse court costs in this matter.

*E. Gatehouse is not entitled to an award of attorney's fees.*

**{¶37}** Finally, Gatehouse requests it be awarded attorney's fees. "If the court renders a judgment that orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)] . . . the court may award reasonable attorney's fees to the relator." R.C. 149.43(C)(3)(b). Because we are ordering the BOH to produce the pet-owners names, we may award attorney's fees.

**{¶38}** However, under the facts of this case, we decline to make an award. Gatehouse made its initial public-records request on July 3, 2024. Stipulation, ¶ 3. Two days later, the BOH indicated it refused to produce the requested records based on its interpretation of R.C. 3701.17. *Id.*, ¶ 4. The BOH denied Gatehouse's request for reconsideration on July 30, 2024. *Id.*, ¶ 5. Thereafter, Gatehouse asked the BOH to provide the requested data with the victim names redacted. *Id.*, ¶ 6. Three days later, the BOH produced the "Stark County Combined General Health District 2023 Annual Animal Exposures Survey, which did not contain victim or owner information. *Id.*, ¶ 7. Gatehouse again reiterated it thought owner information should be produced. *Id.*, ¶ 8. In response, the BOH produced a spreadsheet containing additional details relating to animal bite cases. Owners and victims names were not included in this production. *Id.*, ¶ 9. This document was not maintained as a public record by the BOH but was produced in response to Gatehouse's requests. *Id.*

**{¶39}** The record does not demonstrate any lengthy delays in responding to Gatehouse's public-records request. Instead, the record indicates the BOH timely

responded, with no response taking more than seven days. Further, based on the correspondence between the parties, it appears the BOH, in good faith, interpreted the statutes at issue and believed it could not disclose the names of the dog bite victims or pet owners. We find the BOH's refusal to provide the requested records was not unreasonable. See *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 626 (1994).

**{¶40}** For these reasons, we deny Gatehouse's request for attorney's fees.

### III. Conclusion

**{¶41}** We grant Gatehouse's writ of mandamus, in part, and order the BOH to release the names of pet owners. However, we deny the writ of mandamus as it pertains to the names of bite victims. We deny Gatehouse's requests for statutory damages and attorney's fees but award Gatehouse court costs.

**{¶42}** WRIT OF MANDAMUS GRANTED IN PART AND DENIED IN PART.

**{¶43}** COSTS TO RESPONDENT.

**{¶44}** IT IS SO ORDERED.


By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur